[Civ. No. 3699.   Fourth Dist.   June 22, 1949.]

GOLDEN BRIGGS, Appellant, v. NATIONAL INDUS-
TRIES, INC. (a Corporation), Respondent.

Ray Miller for Appellant.

Gray, Cary, Ames & Driscoll for Respondent.

MUSSELL, J.—This is an appeal from a judgment in favor
of defendant corporation in an action brought against it and
others by plaintiff for damages for personal injuries result-
ing from the processing of plaintiff's hair with a preparation
known as a "Helene Curtis Creme Oil Cold Waves." This

product was manufactured, sold and distributed by the defendant corporation to beauty shops generally and, in the instant case, the preparation used on plaintiff's hair was purchased by defendant Bernard N. Boyd and applied by Mary Carmen, an operator in a beauty shop conducted by defendant Boyd in San Diego. A jury trial resulted in a verdict for defendants Carmen and Boyd and against the defendant corporation. A motion for judgment notwithstanding the verdict was made by defendant National Industries, Inc. The trial court granted the motion, vacated and set aside the judgment which had been entered, and plaintiff appeals from the judgment then entered in favor of defendant corporation.

The question for our determination is whether the court erred in granting the motion for judgment notwithstanding the verdict of the jury. ■ Such a motion may properly be granted only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence to support it, and if there is any substantial evidence, or reasonable inferences to be drawn therefrom, in support of the verdict, the motion should be denied. (*Brandenburg* v. *Pacific Gas & Elec. Co.*, 28 Cal. 2d 282, 284 [169 P.2d 909] ; *Estate of Green*, 25 Cal.2d 535, 546 [154 P.2d 692] ; *Brock* v. *Southern Pacific Co.*, 86 Cal. App.2d 182, 190 [195 P.2d 66].)

■ The evidence viewed in the light most favorable to plaintiff is that she visited the Boyd Beauty Shop on May 15, 1946, and asked the operator, Mrs. Carmen, for a "Helene Curtis" cold wave; that plaintiff was placed in a chair, a plastic robe fastened around her neck over her clothing, a thin strip of cotton material was placed around her neck underneath the plastic robe, her hair was shampooed, "blocked off," and the cold wave solution applied to the hair, after which a "neutralizer" was used to stop the action of the cold wave solution and the hair was lightly shampooed to free the cold wave solution. Plaintiff's hair was then finger-waved and dried. Plaintiff testified that some of the cold wave solution came in contact with her forehead, the side of her face, and some splashed on her right forearm as she smoked a cigarette. About three days after this occurrence plaintiff had a severe dermatitis or inflammation of the skin involving her face, neck, ears and shoulders, with some spots beginning to appear on other parts of her body. She was

treated by a physician for this condition until December 18, 1946, at which time she was discharged as cured.

It was admitted that the cold wave solution used contained thioglycollate, a substance which softens the hair so that it can be shaped. Dr. Hiram Newton, a physician and surgeon specializing in the treatment of skin diseases, testified as a witness for plaintiff that thioglycollic acid is a direct irritant if used in concentration over seven or eight per cent; (It was stipulated that the percentage of thioglycollic acid in the solution used was approximately 6.28 per cent); that plaintiff had a more light, tender skin than the average person. When questioned as to whether plaintiff was allergic to the substance used the doctor testified as follows:

"A. I felt this case was a partially allergic background. You see, the point is that an allergy is defined as an abnormal reactivity of tissue, and if you put some sort of acid on a person's skin, there occurs an inflammation that occurs in practically all people, but if you put lipstick on a thousand women you will find one or two who will develop an irritation to the lipstick, which exemplifies the term that we use as 'allergy.' I felt definitely that there was an allergic factor to this, otherwise, all cases of cold wave would produce a dermatitis. Q. That is true of all cosmetics, isn't it, Doctor, generally; your face powders, cold creams, nail polish; all of these things? A. Practically all of them will produce an irritation on a certain number of people. Q. And generally a very small percentage of the users of the product, isn't it? A. Yes, sir. Q. And that is true in the case of these cold wave solutions, is it not? A. I feel so. Q. You know of your own knowledge and experience that many millions of women use them in America every day throughout the years and only the small—— A. Only a small percentage develop irritations from it; that is right. Q. Some people are allergic to sunlight, are they not? A. Yes, sir. Q. And eggs? A. Yes, sir. Q. And milk? A. Yes, sir. Q. And strawberries? A. Definitely. Q. And animal hair? A. That is correct. Q. Dye and furs? A. Yes, sir. Q. I think we could say that some people are allergic to almost any substance you could find in the world today? A. That you could find some person who has or could react to almost any substance with which they might come in contact, that is true."

Dr. Newton also stated that plaintiff had been vaccinated for smallpox a short time previous to the development of the skin irritation and that there was a definite possibility that

the vaccination could have increased plaintiff's sensitivity to the solution used.

Plaintiff testified that in each of the four years preceding May 15, 1946, she had used the Helene Curtis Cold Wave solution without suffering any harmful effects therefrom, and Mrs. Carmen testified that she had worked with this product for about three years without having any difficulty with it at any time. Defendant Boyd testified that he had used the Helene Curtis Cold Wave product in his shop for approximately four years; that his operators administered it about seven times a week on an average; that the product was used all over the United States and that he experienced no difficulty with it. The record is devoid of any evidence indicating that the product in question had ever caused skin irritation prior to its use in the instant case.

While the evidence might well support an inference of liability on the part of defendants Carmen and Boyd in that the neutralizer used with the cold cream solution was not used upon any portion of plaintiff's person except her hair, and that the cold wave solution was negligently applied, that question was resolved by the jury in favor of the defendants named.

The complaint as originally filed by plaintiff contained allegations of fraud in that defendant corporation in advertising its product made certain false and fraudulent representations upon which plaintiff relied, which representations were intended to deceive plaintiff and the public generally. No evidence was introduced at the trial on the issue of fraud and this issue was withdrawn from the jury by the court's instruction. At the conclusion of the taking of evidence the trial court permitted an amendment to the complaint wherein it was alleged that the defendant National Industries, Inc., carelessly and negligently failed to warn the public or intended users of their product that it contained a chemical toxin known as thioglycollate and that many persons were susceptible to and might suffer serious damage through its use and that defendant corporation carelessly and negligently failed to warn the public that great care should be taken in the application of the product.

We conclude that the evidence would not support a judgment in favor of plaintiff against the defendant corporation on the grounds stated in the amendment to the complaint. It was not shown that the solution used on plaintiff was in

fact dangerous or an irritant to the skin of any person any more than many cosmetics, face powders, cold cream and nail polish universally used by women. There is nothing in the testimony indicating that many persons were susceptible to the product and might suffer damage through its use. In fact, from the record, plaintiff's complaint is the only instance in which injury from it was claimed.

■ The general rule is that a manufacturer must give an appropriate warning of any known dangers which the user of his product would not ordinarily discover. (*Tingey* v. *E. F. Houghton & Co.*, 30 Cal.2d 97, 102 [179 P.2d 807].) One of the essential elements of liability is knowledge on the part of the manufacturer of the dangerous character of the product. There is no substantial evidence that the defendant corporation had any such knowledge. We find no merit in plaintiff's contention that the defendant corporation was required to warn the public that great care should be taken in the application of the product. The directions sent with the solution used are that it was to be used on the hair and not on the skin and there is evidence that had the neutralizer been properly applied no injury would have resulted.

Judgment affirmed.

Barnard, P. J., and Griffin, J., concurred.