Vernelle W. GOBER, Appellee,

v.

REVLON, INC., Appellant.

No. 8806.

United States Court of Appeals Fourth Circuit.

Argued Jan. 14, 1963.

Decided March 28, 1963.

Aubrey R. Bowles, Jr., Richmond, Va. (Jack N. Herod, and Bowles, Boyd & Herod, Richmond, Va., on brief), for appellant.

William H. King, Richmond, Va. (Robert H. Patterson, Jr., Richard D. Obenshain, and McGuire, Woods, King, Gordon & Davis, Richmond, Va., on brief), for appellee.

Before BOREMAN, BRYAN, and J. SPENCER BELL, Circuit Judges.

J. SPENCER BELL, Circuit Judge.

This is an appeal from a judgment of the District Court based upon a jury verdict. The plaintiff, Vernelle W. Gober, brought suit against the defendant, Revlon, Inc., manufacturer of a product known as "Wonder Base", for injury to her fingernails and toenails alleged to have resulted from the use of the defendant's product. Liberally construed, the complaint alleged three causes of action: 1. failure to warn when the defendant knew, or should have known, if it had adequately tested its product before marketing, of its harmful effects, 2. violation of the Federal Food, Drug and Cosmetic Act, and 3. breach of an implied warranty that the product was fit for the purpose for which it was sold. The defendant denied all three, and asserted the affirmative defense as to the breach of warranty claim that under the California law plaintiff's notice was unreasonably delayed. The Court denied defendant's motions for a directed verdict, and, after the jury found for plaintiff, denied defendant's alternative motions for judgment N.O.V. or a new trial.

Nail polish tends to chip and crack, and, to alleviate this problem, the defendant manufactures and sells a nail base coat named "Wonder Base" to be applied to the nails before the polish. Plaintiff purchased Wonder Base on January 15, 1959, in San Francisco, California, where she then lived, and applied it to her nails each week end thereafter for more than eight months. In September 1959 she noticed discoloration, lines on the nails, and "thickening * * * like sand piling up under * * * [her] fingernails". She immediately ceased using Wonder Base or any other cosmetic on her nails. Nevertheless her condition failed to clear up and became the cause of much discomfort. Beginning in December 1959, she visited a chiropodist and two dermatologists in San Francisco. Thereafter plaintiff moved to Richmond, Virginia, and in April 1960 consulted Dr. Richard W. Fowlkes, an eminent dermatologist, who continued to treat her and who was her principal witness. Since the defendant does not deny the plaintiff's injuries, but instead contends that the defendant's product did not cause them, we see no reason to go into detail as to their extent. Action was commenced on November 15, 1960, and when the case was tried in January 1962 the plaintiff's nails, although much improved were far from normal.

In the late 1940's and early 1950's, dermatologists noticed a large number of female patients with symptoms similar to the plaintiff's. Much interest was aroused and after long study, several nail base coat products, including one produced by the defendant called "Everon" were found to have been the causative agents. It was agreed that these nail base coat products contained sensitizing agents which after continued use resulted in an allergic reaction to a substantial number of users. The profession referred to this as "nail base coat dermatitis".

Based on their earlier experiences with nail base coat dermatitis, and after eliminating other possible causes, Dr. Fowlkes and several other dermatologists called by the plaintiff testified that in their opinion the defendant's product

"Wonder Base" has caused the plaintiff's condition.

The defendant's evidence was offered to show that the earlier studies attributed the allergic reactions to three of the four ingredients in their earlier product and that none of these were present in "Wonder Base". It was conceded, however, that a fourth ingredient, Toluene Sulfonamide Formaldehyde Resin, not the subject of intensive study during the earlier period, was a common ingredient to both products. Plaintiff's witness, Dr. Fowlkes, attributed her reaction to this ingredient.

Dr. Fowlkes also testified over defendant's objection that since treating the plaintiff he had treated three or four others for dermatitis which he attributed to the defendant's product. Revlon admitted that it had received two complaints of base coat dermatitis resulting from the use of Wonder Base, one about eight weeks prior to plaintiff's purchase of the product and one subsequent thereto. Plaintiff notified Revlon of her dermatitis on June 17, 1960. This was about nine months after she first noticed the trouble and about six months after she was first informed that Wonder Base might have been its cause.

 The defendant contends on this appeal that the California law, which applies to the substantive issues in the case, does not permit recovery to the user of a cosmetic product for an allergic reaction resulting from her own peculiar sensitivity thereto. We do not agree that the California cases so hold. In addition, we do not find that the plaintiff admitted that her reaction was so unusual as to put her in a category by herself. California has not ruled directly on the point at issue, but the cases do not support the defendant's contention. In Zager v. F. W. Woolworth Co., 30 Cal.App.2d 324, 86 P.2d 389 (Dist.Ct. App.2d Dist.Div. 1, 1939) plaintiff sued for breach of an implied warranty alleging that she had contracted dermatitis from use of a product sold by defendant. Plaintiff's medical expert testified that the dermatitis was caused by an "idio-

syncrasy" and that her reaction was "uncommon". The Appeal Court sustained a verdict for the defendant on the grounds that the evidence permitted an inference that the plaintiff's "constitutional condition" was the proximate cause of her injury rather than the defendant's product. The Court, however, pointed out that the evidence would have sustained a verdict for the plaintiff.

The next California case, Briggs v. National Industries, Inc., 92 Cal.App.2d 542, 207 P.2d 110 (Dist.Ct.App. 4th Dist. 1949), involved a plaintiff who acquired dermatitis after an application of defendant's cold wave solution. Plaintiff's evidence indicated an allergic reaction. The Court affirmed a verdict for the defendant on the ground that there was no showing that the defendant had knowledge of the harmful nature of the product. Again, it is by no means clear that "allergy" is an absolute defense. As a matter of fact, the opinion clearly implies that if the defendant had knowledge of the potential danger of allergic reaction, particularly if the reaction were widespread, the defendant would have had a duty to warn.

 Finally, in Proctor & Gamble Mfg. Co. v. Superior Court, 124 Cal.App. 2d 157, 268 P.2d 199 (Dist.Ct.App. 1st Dist. Div. 2, 1954), the appeal arose over an effort to prohibit an order to disclose the number of complaints which the defendant had received. The Court ruled with the defendant on a technicality but in doing so it stated the rule that "if a seller knows or should know that an article sold by him is dangerous to some persons, even though few in number as compared with the number of users of the article, he is negligent if he fails to warn the ignorant of the hidden danger, 46 Am.Jur. 932, § 808; Annotation, Unusual Susceptibility to Injury, 121 A.L.R. 464; 26 A.L.R.2d 973". The defendant attempts to distinguish this case from the rule stated in Proctor & Gamble on the grounds that the product therein discussed contained a "primary irritant" which if present in sufficient quantity would injure the ordinary user, but no-

where in the opinion does the Court limit its rule in any such manner. In fact the California Courts have nowhere attempted to draw a distinction between a "primary irritant" which if present in small quantity would injure only the highly sensitive and a "sensitizing agent" injurious only to those persons who have become sensitive thereto. We, therefore, feel that this case was properly submitted to the jury under the California cases. We find support for this reasoning in Wright v. Carter Products, 244 F.2d 53 (2 Cir. 1957), where the Second Circuit reversed a trial court which had relied on the statistical infrequency of injury, stating that the trial court should consider whether in the exercise of reasonable precaution the defendant could have foreseen that at least some of its potential users would suffer injury.

We draw further support from Esborg v. Bailey Drug Co., Wash., 378 P. 298 (Sup.Ct.1963), a recent case in which the court reconciled conflicting authorities throughout the nation in the course of finding liability for allergic reaction under a theory of breach of warranty of fitness for use. We agree with its conclusion and reasoning, and we feel that an analysis of cases we have cited indicates that the California Courts would also agree.

In the instant case, the Trial Court charged that the manufacturers of a product "are not guarantors that it will not adversely affect those persons who have a peculiar susceptibility or sensitivity to the use of the product; in other words, one who is allergic to the use thereof".

The Court also charged that "if the manufacturer knows, or should know, that an article sold by him may be dangerous to some persons, even though few in number as compared to the number of users of the article, it has a duty to warn of the danger". In the light of the discussion above, this charge was correct. Any possible confusion to the jury redounded to the benefit of the defendant, for the jury might have been left with the impression that a finding of allergy barred recovery despite Revlon's breach of the duty to warn. Clearly, Revlon cannot complain of this.

Revlon contends that there is no evidence of negligence sufficient to allow a jury to find that it knew or should have known of the danger so that it had a duty to warn. However, there was sufficient evidence for the jury to find (1) that there was actual notice to defendant about eight weeks before plaintiff's purchase; (2) that the defendant should have known that the tests which it conducted with respect to "Wonder Base" were not adequate to disclose the possibility of injurious reaction because tests of a similar nature had failed to disclose the injurious reaction to "Everon"; (3) in light of the testimony of Dr. Fowlkes indicating that Toluene Sulfonamide Formaldehyde Resins caused much dermatitis and were known sensitizers, defendant knew or should have known of the dangers of use of "Wonder Base"; and (4) experience with "Everon" should have put the defendant on notice of possible danger resulting from the use of nail base coats.

The Federal Food, Drug and Cosmetic Act, 21 U.S.C.A. § 331, provides that "[t]he following acts * * * are prohibited: (a) [t]he introduction or delivery for introduction into interstate commerce of any food, drug, device, or cosmetic that is adulterated or misbranded. (b) [t]he adulteration or misbranding of any food, drug, device, or cosmetic in interstate commerce". 21 U.S.C.A. § 361 provides that "[a] cosmetic shall be deemed to be adulterated —(a) [i]f it bears or contains any poisonous or deleterious substance which may render it injurious to users under the conditions of use prescribed in the labeling thereof, or under such conditions of use as are customary or usual * * *."

Defendant does not contest that under the law of California a violation of this act would constitute negligence per se. Rather, Revlon claims failure of the evidence to substantiate a

finding of a violation of the act. There were sufficient facts before the jury, even though they were flatly contradicted, to support a finding that "Wonder Base" contained an ingredient that may cause much allergic reaction. There was testimony that Toluene Sülfonamide Formaldehyde Resin is a "known sensitizer" and a "particularly frequent offender". The jury might have inferred that Revlon has not yet solved the problem that "Everon" pointed up. A reasonable jury may very well find that a drug which causes much allergic reaction contains a "deleterious substance which may render it harmful to users under the conditions of use prescribed in the labeling thereof", and particularly so where the labeling does not warn of the possible reaction and indicate proper precautions. Cf. Gelb v. F. T. C., 144 F.2d 580 (2 Cir. 1944). We find no error in the Trial Court's submission of this issue to the jury.

■ California Civ.Code § 1769 provides that "if, after acceptance of the goods, the buyer fails to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know of such breach, the seller shall not be liable therefor". In Whitfield v. Jessup, 31 Cal.2d 826, 193 P.2d 1 (Sup.Ct.1948) the Court stated that "what constitutes a reasonable time where the goods sold are foods containing latent defects, which are immediately consumed, presents a different question than does the ordinary sale where the article is subject to examination and use which will reveal its defect". In that case the plaintiff contracted undulant fever from drinking some of defendant's cream. Notice was not given for over five and a half months, and the issue of reasonability was held properly left to the jury. It was ap-

proximately six months from the time the plaintiff first suspected that "Wonder Base" was the cause till she notified defendant. It must be remembered that in cases such as this there is a great difference between suspecting and definitely knowing the cause. We do not think California Courts would have taken this issue from the jury.[1]

■ We find no error in the Court's admission of Dr. Fowlke's testimony that he had treated others subsequently to the plaintiff for dermatitis which he attributed to the defendant's product. This evidence was not admissible to show notice to the defendant, but was certainly admissible to show that the defendant's product adversely affected an appreciable number of persons. Especially is this true in view of defendant's strenuous attempt to show that plaintiff was unique in her sensitivity to defendant's product. Counsel's argument to the jury on this point was justifiable.

■ Dr. Fowlkes testified as to certain matters concerning chemicals. Specifically he stated that Toluene Sulfonamide Formaldehyde Resin contains elements which were frequent causes of allergy. Defendant protests that Dr. Fowlkes was not qualified as a chemical expert and so his testimony as to chemical matters should be stricken. However, Dr. Fowlkes was testifying as a dermatological expert to the reaction of humans to certain chemicals. Certainly this is within the scope of his medical qualifications. His lack of qualifications as a chemist went to the weight of his testimony, not its admissibility.

We have examined the defendant's numerous other exceptions and find them without merit. The judgment of the District Court is therefore,

Affirmed.

1. But see Greenman v. Yuba Power Products, Inc., Cal., 27 Cal.Rptr. 697, 377 P. 2d 897, decided January 24, 1963, in which the California Supreme Court held that Sec. 1769's requirement of notice within a reasonable time does not apply to a breach of warranty action brought by a consumer against a manufacturer with whom the plaintiff was not in privity.