[No. A052292. First Dist., Div. One. Jan. 9, 1992.]

LYN McKINNEY, Plaintiff and Respondent, v.
REVLON, INC., Defendant and Appellant.

**COUNSEL**

Cesari, Werner & Moriarty, D. Ralph Cesari and Kerri A. Johnson for Defendant and Appellant.

Wilhelm, Thompson, Wentholt & Gibbs and James A. Thompson for Plaintiff and Respondent.

**OPINION**

**STEIN, J.**—Revlon, Inc., appeals from a judgment in favor of Lyn McKinney for injuries caused by a hair frosting product manufactured by Revlon. We affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1988, McKinney, a registered nurse, purchased Revlon Frost and Glow, a home hair frosting product manufactured by appellant. Previously, she had her hair frosted in a beauty salon without incident, but had not used a home frosting product. McKinney was healthy and had no diseases or other physical abnormalities at the time she used the product. Nothing on the

Revlon box containing the product warned of any potential side effects. McKinney testified that if there had been a warning, she would not have purchased the product. She read the directions, which instructed her to do a hair strand test to determine how long the product should be left on the hair. She placed a plastic shower-type cap with holes in it on her head, pulled a strand of hair through one of the holes, and applied part of the chemical to the strand of hair. The function of the strand test was solely to determine how long it took to bleach the hair, not to detect any physical reaction to the product.

After she completed the strand test, McKinney pulled a number of other strands of hair through the holes in the cap and applied the chemicals as directed. At all times, she was careful not to get the chemicals in her eyes or on her face. After waiting the correct amount of time, she removed the cap and rinsed the product out of her hair.

The next morning McKinney noticed tenderness at the back of her head when she combed her hair. The discomfort increased over the next two days. When she noticed discoloration around the hairline, itching, and a slight fever, she went to the hospital clinic and was given medication. The following day, her face began to swell and the discoloration spread to her eye. When the eye swelled shut and the pain increased, she was admitted to the hospital, where she was placed on three intravenous antibiotics. She had an elevated temperature, her head and face were extremely swollen, her skin was a dark red to purple color, and she was in a great deal of pain. At her insistence, she was discharged from the hospital in four days but was unable to return to work for another week.

McKinney's doctor diagnosed her condition as a local reaction to the topical application of the Revlon product. She had not applied the product directly to her skin or noticed it on her skin, so she assumed that it must have leaked through the plastic cap. McKinney filed a products liability complaint against Revlon alleging negligence and strict liability theories.

At a trial before the court, McKinney was the only plaintiff's witness. Melvin Goldberg, Revlon's vice-president of research and development, was the only defense witness.

Goldberg began with Revlon as a laboratory chemist in 1957 and had supervised the research and development of Revlon Frost and Glow since the product's introduction in 1975. The product has three components: a frosting powder, an activator, and a cream developer/shampoo. The shampoo component, which contained no skin irritants, was skin-tested on 100 human

volunteers.[1] Goldberg testified that sodium metasilicate, the active cosmetic ingredient in the frosting powder, is a primary irritant, which would cause an adverse reaction to every person who applied it to their skin. No human patch testing was done on the frosting powder, but Goldberg had applied it to his own skin and experienced reddening.

When questioned about a competitor's product, which did contain a warning regarding irritation and required a patch test, Goldberg stated that the other product contained an additional rinse component which necessitated the warning. Goldberg testified that if some of the Frost and Glow chemicals did leak through a hole in the cap during the 20- to 25-minute period that the consumer was waiting for the product to act, the entire cap should be removed and the product rinsed out of the hair. The instructions did not tell the consumer that the cap would have to be removed and the frosting process discontinued if there was any contact with the scalp. Goldberg was unaware of any consumer complaints regarding the product.

Revlon knew of the likelihood of an adverse reaction, but decided not to place a warning on the package or in the instructions even though no additional cost was involved. The instructions told the user not to apply the product directly to the scalp and to wash the product off if it contacted the skin. There was no instruction to perform a skin patch test to determine sensitivity to the product. There was no indication of the possible effect of contact with the skin. Although McKinney testified that she never allowed the product to touch her skin, Goldberg testified that she must have misused the product because the plastic cap was designed so that it could not leak the frosting solution onto the scalp.

After the case was submitted, the trial court issued its tentative decision finding that the product was composed of chemicals which would cause an adverse reaction to every person who had the chemical contact their skin. The court found that there was no warning that the product would cause a reaction, and that the mere admonition to wash a contacted area with water was insufficient to alert the consumer to the possible consequences of using the product. The court stated that a skin patch test would have alerted plaintiff to the problem. Finding that Revlon's product caused the injury, the court awarded $25,085 to McKinney. Revlon appealed.

## DISCUSSION

On appeal, Revlon argues that the trial court improperly imposed strict liability without a finding that Revlon knew that its product would

---

[1] The court sustained a hearsay objection to testimony regarding the results of testing as reported by outside agencies.

cause this type of reaction. Revlon claims that it cannot be held liable for what it characterizes as the allergic idiosyncratic reaction experienced by McKinney. We note initially that there was no evidence that McKinney suffered from an allergy or hypersensitivity of any kind.

The instant case was tried on the theory that the product was rendered defective by Revlon's failure to warn of its inherent or hidden danger. Our Supreme Court has recently clarified the scope of the failure-to-warn theory of strict liability in *Anderson* v. *Owens-Corning Fiberglas Corp.* (1991) 53 Cal.3d 987, 994 [281 Cal.Rptr. 528, 810 P.2d 549]. ■ Thus, "[t]he rules of strict liability require a plaintiff to prove only that the defendant did not adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution." (*Id.* at p. 1002.) Earlier cases have stated the requirement as follows: "[I]f a seller knows or should know that an article sold by him is dangerous to *some* persons, even though few in number as compared with the number of users of the article, he is negligent if he fails to warn the ignorant of the hidden danger." (*Proctor & Gamble Co.* v. *Superior Court* (1954) 124 Cal.App.2d 157, 162 [268 P.2d 199].)[2]

■ Revlon cites *Oakes* v. *E. I. Du Pont de Nemours & Co., Inc.* (1969) 272 Cal.App.2d 645 [77 P.2d 709] as an example of nonliability for allergic or idiosyncratic reactions of consumers. However, in *Oakes*, a demurrer was sustained because the complaint failed to allege that the defendant knew or should have known that its weed killer could cause a reaction in allergic people. Furthermore, the manufacturer included the following warning on the product: " 'Caution! May cause irritation of eyes, nose, throat, and skin. Avoid breathing dust or spray mist. Avoid contact with skin, eyes and clothing.' " (*Id.* at p. 648.) The court found that the manufacturer was not required to include specific warnings of unknowable allergies. (*Id.* at p. 651.)

The instant case is unlike *Oakes* because there was absolutely no warning of any danger. Furthermore, Revlon's witness admitted knowledge of the danger of skin irritation. Contrary to Revlon's argument, it was unnecessary

---

[2]The *Anderson* court distinguished the negligence theory as one that assesses "what a reasonably prudent manufacturer would have known and warned about." (53 Cal.3d at p. 1002.) "[A] reasonably prudent manufacturer might reasonably decide that the risk of harm was such as not to require a warning as, for example, if the manufacturer's own testing showed a result contrary to that of others in the scientific community. Such a manufacturer might escape liability under negligence principles. In contrast, under strict liability principles the manufacturer has no such leeway; the manufacturer is liable if it failed to give warning of dangers that were known to the scientific community at the time it manufactured or distributed the product." (*Anderson* v. *Owens-Corning Fiberglas Corp., supra,* 53 Cal.3d at p. 1003.)

for McKinney to introduce evidence of other complaints or knowledge of the scientific community, where Revlon admitted that the product contained a skin irritant. ■■■■ We know of no authority for Revlon's insinuation that it must be shown that Revlon had actual knowledge of the possibility of the precise injury suffered by McKinney before it can be held strictly liable.[3]

■ Revlon also argues that the trial court mistakenly ignored the alternative tests for liability set out in *Finn* v. *G. D. Searle & Co.* (1984) 35 Cal.3d 691, 699 [200 Cal.Rptr. 870, 677 P.2d 1147]. The *Finn* court, referencing Professor Prosser, noted that warnings may be of two kinds: 1) adequate instructions on use of the product; and 2) warning of the potential risks or side effects. (*Id.* at p. 699.)[4] Revlon argues that it had the option of warning the consumer of the risk or instructing on the proper use of the product. It contends that its instructions were sufficient to insulate it from liability. This contention is merely an attempt to reargue the evidence supporting the trial court's decision that the instructions to rinse the product with water were not sufficient to protect or advise the consumer. The evidence, viewed in the light most favorable to the decision, is that McKinney was injured in spite of the fact that she followed the product instructions. The instructions did not tell the consumer that leakage was possible, or that the entire cap should be removed and the product rinsed out prior to completion of the process, if a leak occurred. This is sufficient to support the court's finding that the instructions did not adequately alert the consumer to the potential risk.

---

[3]The fact that a consumer may have suffered from an allergy would not necessarily be a defense to Revlon's liability. In *Gober* v. *Revlon, Inc.* (4th Cir. 1963) 317 F.2d 47, the court applied California law to determine that Revlon was subject to liability for negligence in failing to warn of the danger of allergic reaction. In *Esborg* v. *Bailey Drug Company* (1963) 61 Wn.2d 347 [378 P.2d 298], cited in *Gober*, the Washington Supreme Court stated: "We are satisfied that, in the light of modern scientific, technological, and medical advances, allergic phenomena constitutes a factor which any prudent manufacturer of cosmetic, food, drug or dye products necessarily must consider. When, therefore, a manufacturer produces, and distributes, a product containing scientifically or medically known chemical sensitizers, primary irritants or irritants in sensitizing concentrations, such manufacturer either takes a calculated risk that the number of persons likely to be affected is negligible, or his scientific research so indicates." (*Id.* at p. 304.) The *Esborg* court found liability on a breach of warranty theory. Whether or not Revlon is liable for allergic reactions is not dispositive in the instant case, for there was no evidence that McKinney's injury was related to allergies.

[4]Professor Prosser also states that a manufacturer may be liable for *inadequate warnings* as well as for the complete lack of a warning. (Prosser & Keeton, The Law of Torts (5th Ed. 1984) § 96, p. 685.)

## Conclusion

The trial court's imposition of liability for appellant's inadequate warning of known dangers is supported by substantial evidence and does not utilize an improper legal theory. The judgment is affirmed.

Strankman, P. J., and Dossee, J., concurred.