[No. B115078. Second Dist., Div. Five. June 3, 1999.]

DAVID LIVINGSTON, Plaintiff and Appellant, v.
MARIE CALLENDERS, INC., Defendant and Respondent.

832

COUNSEL

Goldstein & Goldstein, Howard A. Goldstein; Esner & Chang and Stuart B. Esner for Plaintiff and Appellant.

R. Q. Shupe for Defendant and Respondent.

OPINION

TURNER, P. J.—

## I. INTRODUCTION

The question in this case is whether a restaurant offering vegetable soup "made from the freshest ingredients, from scratch, . . . every day," has an affirmative obligation to warn customers the soup contains monosodium glutamate (MSG). Plaintiff, David Livingston, alleges he suffered a severe adverse reaction after consuming a bowl of Marie Callenders's vegetable soup. It is undisputed the soup contained MSG. Had plaintiff known the soup contained MSG, he would not have eaten it. The trial court dismissed plaintiff's strict liability claim on the ground, as a matter of law, there was nothing wrong with the soup, or the MSG in the soup. Plaintiff contends that, pursuant to section 402A of the Restatement Second of Torts, comment j, a cause of action for strict liability failure to warn exists where a product "contains an ingredient to which a substantial number of the population are allergic, and the ingredient is one whose danger is not generally known, or if known is one which the consumer would reasonably not expect to find in the

product, [and the seller] has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge, of the presence of the ingredient and the danger." We agree. Accordingly, we remand for a limited retrial on that theory. We wish to emphasize that we are not holding that in every or any case there is a duty to warn restaurant customers of the presence of MSG; rather, we merely hold plaintiff is entitled to a limited retrial on his failure to warn contentions. Whether it can be held by an appellate court that there is a duty to warn of the presence of MSG must await a trial and later appeal.

## II.  Substantive and Procedural History

In his third amended complaint, the operative pleading, plaintiff alleged that on July 12, 1993, he went to a Marie Callenders restaurant in Toluca Lake for lunch. He reviewed the menu and was interested in ordering a bowl of vegetable soup. He told the waitress he had asthma and he wanted to know if the soup contained MSG. The waitress assured plaintiff the soup did not contain MSG. Plaintiff ordered and consumed the soup. In fact, the soup did contain MSG. As a result of consuming the soup, plaintiff suffered MSG symptom complex including, but not limited to, respiratory arrest, hypoxia, cardiac arrest, and brain damage. In his first cause of action, for strict liability, plaintiff alleged the presence of MSG in the soup rendered it defective and unfit for human consumption. Plaintiff also asserted causes of action for negligence, breach of implied warranty, breach of express warranty, negligent misrepresentation, and intentional spoliation of evidence.

In June 1997, the trial court ruled on 32 motions *in limine*. With the exception of plaintiff's negligent misrepresentation cause of action, no written motion sought an order dismissing claims or defendants. Nevertheless, in addition to ruling on the *in limine* motions, the trial court struck plaintiff's causes of action with the exception of his negligence claim and dismissed all defendants except Marie Callenders No. 24, the restaurant.[1] The trial court concluded "there was nothing wrong with the soup, or the MSG in the soup."

The case proceeded to trial on defendant's negligence cause of action against the restaurant. A special verdict form was submitted to the jury. The

---

[1]The dismissed defendants, each of which was alleged to be a manufacturer, supplier, or seller of the product, were: Marie Callenders, Inc.; Marie Callenders Ventures, Inc.; Marie Callenders Wholesalers, Inc.; Association of Marie Callender Franchisees, Inc.; and Bay Ventures, Inc. Marie Callenders, Inc. is the only defendant that has appeared in this court even though the notice of appeal refers to the orders dismissing all defendants other than the restaurant from the lawsuit. There was no basis prior to a trial to dismiss these defendants. Hence, the order of dismissal is reversed as to them.

first question asked, "Was the defendant negligent?" The jury responded in the negative. A judgment was entered on the special verdict. This appeal followed.

## III. Discussion

### A. *Scope of the Appeal*

Plaintiff's cause of action for spoliation of evidence was summarily adjudicated adversely to him. That ruling is not at issue on appeal. In addition, plaintiff raises no issue on appeal as to his cause of action for negligent misrepresentation. Therefore, he has waived any potential issue as to that claim. (*Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [188 Cal.Rptr. 115, 655 P.2d 317]; *Johnston v. Board of Supervisors* (1947) 31 Cal.2d 66, 70 [187 P.2d 686], disapproved on another point in *Bailey v. County of Los Angeles* (1956) 46 Cal.2d 132, 139 [293 P.2d 449]; *Fidelity Mortgage Trustee Service, Inc. v. Ridgegate East Homeowners Assn.* (1994) 27 Cal.App.4th 503, 507-508, fn. 5 [32 Cal.Rptr.2d 521]; *C.J.L. Construction, Inc. v. Universal Plumbing* (1993) 18 Cal.App.4th 376, 380, fn. 2 [22 Cal.Rptr.2d 360].) Further, at oral argument before this court, plaintiff's counsel conceded the judgment against plaintiff on his negligence claim should be affirmed.[2] Moreover, counsel asserted the theory on which plaintiff seeks a retrial is strict liability failure to warn under the Restatement Second of Torts section 402A, comment j, page 353.[3] Therefore, we do not consider the viability of plaintiff's causes of action for breach of express or implied warranty.

### B. *Procedure*

Plaintiff contends the procedure by which the trial court struck causes of action and dismissed defendants was unauthorized, he had no notice of the ruling, and no opportunity to submit briefing. No objection to the procedure was raised in the trial court. The objections cannot be asserted for the first time on appeal. (*People v. Williams* (1997) 16 Cal.4th 153, 250 [66 Cal.Rptr.2d 123, 940 P.2d 710]; *People v. Rodrigues* (1994) 8 Cal.4th 1060, 1119, fn. 22 [36 Cal.Rptr.2d 235, 885 P.2d 1]; *People v. Garceau* (1993) 6 Cal.4th 140, 173 [24 Cal.Rptr.2d 664, 862 P.2d 664]; *People v. McPeters* (1992) 2 Cal.4th 1148, 1174 [9 Cal.Rptr.2d 834, 832 P.2d 146]; *People v. Ashmus* (1991) 54 Cal.3d 932, 972-973, fn. 10 [2 Cal.Rptr.2d 112, 820 P.2d 214]; *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1138 [275

---

[2]Defendant has not argued any error in refusing to submit the strict liability failure to warn claim to the jury was harmless. (Cal. Const., art. VI, § 13.)

[3]Plaintiff expressly does not contend there was any design or manufacturing defect.

Cal.Rptr. 797, 800 P.2d 1227]; *Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1065-1066 [232 Cal.Rptr. 528, 728 P.2d 1163]; *Estate of Leslie* (1984) 37 Cal.3d 186, 202 [207 Cal.Rptr. 561, 689 P.2d 133]; *Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184-185, fn. 1 [151 Cal.Rptr. 837, 588 P.2d 1261]; *Estate of Westerman* (1968) 68 Cal.2d 267, 278-279 [66 Cal.Rptr. 29, 437 P.2d 517].)

## C. *Merits*

### *Background of California Law Concerning Failure to Warn*

Before addressing the specific California law relating to strict tort liability in the present case, it is appropriate to review failure to warn jurisprudence in this state. In *Carlin v. Superior Court* (1996) 13 Cal.4th 1104, 1110 [56 Cal.Rptr.2d 162, 920 P.2d 1347], a decision involving drug manufacturer liability, the Supreme Court described the development of strict tort liability in California as follows: "In *Anderson* [v. *Owens-Corning Fiberglas Corp.* (1991) 53 Cal.3d 987, 994-1004 [281 Cal.Rptr. 528, 810 P.2d 549]], we summarized prior case law and outlined the general principles of strict liability as they have been applied by California courts for over three decades. (*Anderson, supra*, 53 Cal.3d at pp. 994-1003.) ■ As we explained therein, under our doctrine of strict liability, first announced in *Greenman v. Yuba Power Products, Inc.* (1963) 59 Cal.2d 57[, 60-64] [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049], a manufacturer ' "is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being." . . . "The purpose of such liability is to insure that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves." . . . [¶] Strict liability, however, was never intended to make the manufacturer or distributor of a product its insurer. "From its inception, . . . strict liability has never been, and is not now, *absolute* liability . . ." . . . [¶] Strict liability has been invoked for three types of defects—manufacturing defects, design defects, and "warning defects," i.e., inadequate warnings or failures to warn.' (*Anderson, supra*, 53 Cal.3d at pp. 994-995; see *Barker v. Lull Engineering Co.* (1978) 20 Cal.3d 413 [, 432-435] [143 Cal.Rptr. 225, 573 P.2d 443, 96 A.L.R.3d 1].)" (Original italics.)

The present appeal involves an allegation that defendants failed to warn plaintiff of the presence of MSG in the soup. California's strict liability failure to warn jurisprudence was synthesized in *Carlin* as follows: "We specifically addressed the issue 'whether knowledge, actual or constructive,

is a component of strict liability on the failure-to-warn theory.' (*Anderson*, *supra*, 53 Cal.3d at p. 990.) We concluded that it is. 'The California courts, either expressly or by implication, have to date required knowledge, actual or constructive, of potential risk or danger before imposing strict liability for a failure to warn.' (*Id.* at p. 991.) We affirmed that 'California is well settled into the majority view that . . . [¶] . . . knowledge or knowability is a component of strict liability for failure to warn.' (*Id.* at p. 1000.) [¶] Although *Anderson* involved an action against a manufacturer of asbestos, we relied extensively on cases involving a variety of products, including prescription drugs. In particular, we were guided by our prior decision in *Brown* [v. *Superior Court* (1988)] 44 Cal.3d 1049 [245 Cal.Rptr. 412, 751 P.2d 470], in which we refused to extend strict liability to the failure to warn of risks that were unknown or *unknowable* at the time of distribution. 'As we stated [in *Brown*], if a manufacturer could not count on limiting its liability to risks that were known or knowable at the time of manufacture or distribution, it would be discouraged from developing new and improved products for fear that later significant advances in scientific knowledge would increase its liability. . . . [A] manufacturer is not strictly liable for injuries caused by a prescription drug so long as it was properly prepared and accompanied by warnings of its dangerous propensities that were either known or scientifically knowable at the time of distribution.' (*Anderson*, *supra*, 53 Cal.3d at p. 999.) We concluded that the holding in *Brown* applied to all products, not only to prescription drugs: '*Brown*'s logic and common sense are not limited to drugs. In recognizing the extent to which the majority rule pervades California precedents in both drug and nondrug cases, *Brown* clearly implied that knowledge is also a component of strict liability for failure to warn in cases other than prescription drug cases.' (*Id.* at p. 1000; see also *Vermeulen* v. *Superior Court* (1988) 204 Cal.App.3d 1192, 1206 . . . ['We . . . do not interpret *Brown*'s analysis of the failure to warn issue to necessarily be limited to prescription drug cases. The same rationale applies equally to other products.'].)" (*Carlin* v. *Superior Court, supra*, 13 Cal.4th at pp. 1110-1111, italics in original & fn. omitted.) The Supreme Court in *Carlin* emphasized its failure to warn jurisprudence applied to "all products." (*Id.* at p. 1111, fn. 1.) Strict tort liability jurisprudence based on a defect applies to food served in a restaurant. (*Mexicali Rose* v. *Superior Court* (1992) 1 Cal.4th 617, 633-634 [4 Cal.Rptr.2d 145, 822 P.2d 1292].)

In *Carlin*, the Supreme Court emphasized that strict liability failure to warn jurisprudence is different from negligence. ■ The *Carlin* majority explained: " '[F]ailure to warn in strict liability differs markedly from failure to warn in the negligence context. Negligence law in a failure-to-warn case requires a plaintiff to prove that a manufacturer or distributor did not warn of a particular risk for reasons which fell below the acceptable standard of care,

i.e., what a reasonably prudent manufacturer would have known and warned about. Strict liability is not concerned with the standard of due care or the reasonableness of a manufacturer's conduct. The rules of strict liability require a plaintiff to prove only that the defendant did not adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution. Thus, in strict liability, as opposed to negligence, the reasonableness of the defendant's failure to warn is immaterial. [¶] Stated another way, a reasonably prudent manufacturer might reasonably decide that the risk of harm was such as not to require a warning as, for example, if the manufacturer's own testing showed a result contrary to that of others in the scientific community. Such a manufacturer might escape liability under negligence principles. In contrast, under strict liability principles the manufacturer has no such leeway; the manufacturer is liable if it failed to give warning of dangers that were known to the scientific community at the time it manufactured or distributed the product.' (*Anderson, supra*, 53 Cal.3d at pp. 1002-1003, fn. omitted.) Similarly, a manufacturer could not escape liability under strict liability principles merely because its failure to warn of a known or reasonably scientifically knowable risk conformed to an industry-wide practice of failing to provide warnings that constituted the standard of reasonable care. [¶] We explained the policy behind our strict liability standard for failure to warn as follows: ' "When, in a particular case, the risk qualitatively (e.g., of death or major disability) as well as quantitatively, on balance with the end sought to be achieved, is such as to call for a true choice judgment, *medical or personal*, the warning must be given. . . ." [Citation.] Thus, the fact that a manufacturer acted as a reasonably prudent manufacturer in deciding not to warn, while perhaps absolving the manufacturer of liability under the negligence theory, will not preclude liability under strict liability principles if the trier of fact concludes that, based on the information scientifically available to the manufacturer, the manufacturer's failure to warn rendered the product unsafe to its users.' (*Anderson, supra*, 53 Cal.3d at p. 1003, italics added, quoting *Davis* v. *Wyeth Laboratories, Inc.* (9th Cir. 1968) 399 F.2d 121, 129-130 [applying strict liability to a manufacturer of prescription drugs].)" (*Carlin* v. *Superior Court, supra*, 13 Cal.4th at pp. 1112-1113, italics in original & fn. omitted.)

The question whether strict tort liability is materially different from negligence was finally resolved in *Carlin*. Two justices filed separate opinions suggesting in whole or in part that failure to warn strict tort liability was simply a variant of negligence. (*Carlin* v. *Superior Court, supra*, 13 Cal.4th at pp. 1135-1146 (conc. and dis. opn. of Turner, J.); *id.* at pp. 1146-1163 (dis. opn. of Baxter, J.).) However, the *Carlin* majority has resolved that issue once and for all in the failure to warn context—negligence does not

equal strict tort liability and in fact there is a "marked" difference between the two theories. (*Id.* at pp. 1112-1113.)

■    Finally, the failure to warn contention in the present case arises in the context of a person with an allergy to a particular food additive, MSG. California has adopted the Restatement Second of Torts section 402A, comment j application of strict tort liability failure to warn in the case of allergies. Several Court of Appeal decisions in the context of allergic reactions to nonfood products are consistent with or have expressly adopted comment j. (*McKinney* v. *Revlon, Inc.* (1992) 2 Cal.App.4th 602, 607, 608, fn. 3 [3 Cal.Rptr.2d 72] [home hair frosting product]; *Oakes* v. *E.I. DuPont de Nemours & Co., Inc.* (1969) 272 Cal.App.2d 645, 649, 650-651 [77 Cal.Rptr. 709] [weed killer]; *Harris* v. *Belton* (1968) 258 Cal.App.2d 595, 608 [65 Cal.Rptr. 808] [skin tone cream]; *Magee* v. *Wyeth Laboratories, Inc.* (1963) 214 Cal.App.2d 340, 352-353 [29 Cal.Rptr. 322] [drug]; *Briggs* v. *National Industries, Inc.* (1949) 92 Cal.App.2d 542, 545-546 [207 P.2d 110] [cold wave preparation]; *Zager* v. *F.W. Woolworth Co.* (1939) 30 Cal.App.2d 324, 332-333 [86 P.2d 389] [freckle cream].) The California Supreme Court has noted that this state's strict liability failure to warn jurisprudence is based on the Restatement Second of Torts section 402A, comment j. (*Anderson* v. *Owens-Corning Fiberglas Corp.* (1991) 53 Cal.3d 987, 995-996 & fn. 8 [281 Cal.Rptr. 528, 810 P.2d 549].)

Restatement Second of Torts section 402A, comment j, page 353 states: "Directions or warning. In order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use. The seller may reasonably assume that those with common allergies, as for example to eggs or strawberries, will be aware of them, and he is not required to warn against them. *Where, however, the product contains an ingredient to which a substantial number of the population are allergic, and the ingredient is one whose danger is not generally known, or if known is one which the consumer would reasonably not expect to find in the product, the seller is required to give warning against it, if he has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge, of the presence of the ingredient and the danger.* Likewise in the case of poisonous drugs, or those unduly dangerous for other reasons, warning as to use may be required." (Italics added.) The recently adopted Restatement Third of Torts section 2, comment k, page 32 similarly states: "Cases of adverse allergic or idiosyncratic reactions involve a special subset of products that may be defective because of inadequate warnings. . . . [¶] The general rule in cases involving allergic reactions is that a warning is required when the harm-causing ingredient is one to which a substantial number of persons are allergic." Further, the Restatement Third

of Torts, Products Liability, section 2, comment k notes: "The ingredient that causes the allergic reaction must be one whose danger or whose presence in the product is not generally known to consumers. . . . When the presence of the allergenic ingredient would not be anticipated by a reasonable user or consumer, warnings concerning its presence are required." (*Ibid.*)

Finally, the application of comment j of section 402A of the Restatement Second of Torts in a case involving an allergic reaction generally involves issues of fact. (*Vaughn* v. *Nissan Motor Corp. in U.S.A., Inc.* (4th Cir. 1996) 77 F.3d 736, 738, fn. 5 ["Where the manufacturer is or should be aware that an appreciable number of consumers are unusually susceptible to injury from his product—allergies are the classic example—a duty to warn those consumers may arise."]; *Santarelli* v. *BP America* (M.D.Pa. 1996) 913 F.Supp. 324, 332 [summary judgment denied given conflicting evidence on applicability of comment j]; *Brown* v. *McDonald's Corp.* (1995) 101 Ohio App.3d 294 [655 N.E.2d 440, 444] [summary judgment inappropriate in light of conflicting evidence on whether manufacturer knew of risk to allergic plaintiff]; see also *Briggs* v. *National Industries, Inc., supra*, 92 Cal.App.2d at pp. 543-546 [known or knowable danger is a question of fact]; *Zager* v. *F.W. Woolworth Co., supra*, 30 Cal.App.2d at pp. 332-333 [question of fact whether plaintiff was hypersensitive to a certain product].)

D. *Application of Failure to Warn Strict Tort Liability Principles to the Present Case*

As discussed above, under the Restatement Second of Torts section 402A, comment j, and California decisional authority, a defendant may be liable to a plaintiff who suffered an allergic reaction to a product on a strict liability failure to warn theory when: the defendant's product contained "an ingredient to which a substantial number of the population are allergic"; the ingredient "is one whose danger is not generally known, or if known is one which the consumer would reasonably not expect to find in the product"; and where the defendant knew or "by the application of reasonable, developed human skill and foresight should have know[n], of the presence of the ingredient and the danger." (Rest.2d Torts, § 402A, com. j, p. 353; *Oakes* v. *E.I. DuPont de Nemours & Co., Inc., supra*, 272 Cal.App.2d at pp. 646-651; *Harris* v. *Belton, supra*, 258 Cal.App.2d at pp. 605-609; *Magee* v. *Wyeth Laboratories, Inc., supra*, 214 Cal.App.2d at pp. 352-354; *Briggs* v. *National Industries, Inc., supra*, 92 Cal.App.2d at pp. 543-546; *Zager* v. *F.W. Woolworth Co., supra*, 30 Cal.App.2d at pp. 332-333; see *McKinney* v. *Revlon, Inc., supra*, 2 Cal.App.4th at pp. 606-608 & fn. 3; accord, *Gober* v. *Revlon, Inc.* (4th Cir. 1963) 317 F.2d 47, 49-52 [applying California law]; *Brown* v. *McDonald's Corp., supra*, 655 N.E.2d at p. 444; *Allen* v. *Delchamps, Inc.*

(Ala. 1993) 624 So.2d 1065, 1068-1069 ; *Esborg* v. *Bailey Drug Company* (1963) 61 Wn.2d 347 [378 P.2d 298, 301-305].) Moreover, those issues are for the trier of fact to determine. (*Vaughn* v. *Nissan Motor Corp. in U.S.A., Inc., supra,* 77 F.3d at p. 738, fn. 5; *Santarelli* v. *BP America, supra,* 913 F.Supp. at p. 332; see also *Briggs* v. *National Industries, Inc., supra,* 92 Cal.App.2d at pp. 543-546; *Zager* v. *F.W. Woolworth Co., supra,* 30 Cal.App.2d at pp. 332-333.) Further, issues of legal causation must be resolved. (*Mexicali Rose* v. *Superior Court, supra,* 1 Cal.4th at pp. 630-633; *Harris* v. *Belton, supra,* 258 Cal.App.2d at p. 608; see *McKinney* v. *Revlon, Inc., supra,* 2 Cal.App.4th at p. 608, fn. 3.) Those issues not having been tried, it was error to strike plaintiff's strict liability cause of action. The trial court improperly based its order striking the claim on a finding, as a matter of law, that "there was nothing wrong with . . . the MSG in the soup." Plaintiff is entitled to a trial on the theory there was a failure to warn of an ingredient to which a substantial number of the population are allergic within the meaning of comment j to section 402A of the Restatement Second of Torts.[4] (*Kelly* v. *New West Federal Savings* (1996) 49 Cal.App.4th 659, 677 [56 Cal.Rptr.2d 803].)

### E.  *Remand to a Different Judge*

Plaintiff requests this matter be remanded to a different judge on the ground "that both the procedure used and the substance of the trial court's ruling reflects that the court seems to have a bias against plaintiff's claims . . . ." Plaintiff relies on Code of Civil Procedure, section 170.1, subdivision (c) which states: "At the request of a party or on its own motion an appellate court shall consider whether in the interests of justice it should direct that further proceedings be heard before a trial judge other than the judge whose judgment or order was reviewed by the appellate court." The Courts of Appeal have held that the power to disqualify a judge under Code of Civil Procedure section 170.1, subdivision (c), should " 'be used sparingly and only where the interests of justice require it.' " (*Kent* v. *Superior Court* (1992) 2 Cal.App.4th 1392, 1395 [4 Cal.Rptr.2d 21]; *People* v. *Crew* (1991) 1 Cal.App.4th 1591, 1608-1610, fn. 13 [2 Cal.Rptr.2d 755]; *People* v. *Gulbrandsen* (1989) 209 Cal.App.3d 1547, 1562 [258 Cal.Rptr. 75].) We find the trial judge's conduct in this matter does *not* warrant a remand to a different judge. Plaintiff's arguments to the contrary completely lack any merit whatsoever. (Cf., e.g., *Ng* v. *Superior Court* (1997) 52 Cal.App.4th 1010, 1024 [61 Cal.Rptr.2d 49] [judge made "derogatory and apparently unfounded statements concerning counsel" and had an "unusual and inappropriate desire to keep the case"].) We express no opinion as to the applicability of Code of Civil Procedure section 170.6, subdivision (2).

---

[4]Plaintiff contends there was an affirmative obligation to warn customers there was MSG in the soup. He does not contend there was any obligation to warn about possible adverse reactions to MSG.

## IV. DISPOSITION

The order striking plaintiff's strict liability cause of action is reversed. The order of dismissal as to defendants Marie Callenders, Inc., Marie Callenders Ventures, Inc., Marie Callenders Wholesalers, Inc., Association of Marie Callender Franchisees, Inc., and Bay Ventures, Inc. is reversed. The finding Marie Callenders No. 24 was not negligent is affirmed. The matter is remanded for a limited retrial on the issue of whether any defendant is liable for failure to warn of an ingredient to which a substantial number of the population are allergic within the meaning of comment j to section 402A of the Restatement Second of Torts. Plaintiff, David Livingston, is to recover his costs on appeal jointly and severally from all defendants.

Armstrong, J., and Godoy Perez, J., concurred.