BROWN et al., Appellants,

v.

McDONALD'S CORPORATION et al., Appellees.

[Cite as *Brown v. McDonald's Corp.* (1995), 101 Ohio App.3d 294.]

Court of Appeals of Ohio,
Ninth District, Lorain County.

No. 94CA005904.

Decided March 15, 1995.

*William J. Novak* and *Gabrielle G. Kinkela,* for appellants.

*Thomas Schick,* for appellees McDonald's Corp. and Richard K. Potts.

*James L. Glowacki* and *James J. Imbrigiotta,* for appellee Keystone Food Corp.

---

BAIRD, Presiding Judge.

Susan and Marvin Brown have appealed from an order of the Lorain County Court of Common Pleas granting summary judgment to the appellees, McDonald's Corporation ("McDonald's"), Richard K. Potts, and Keystone Food Corporation ("Keystone"). We affirm in part and reverse in part.

On April 30, 1991, Susan Brown bought a McLean Deluxe hamburger at a McDonald's franchise owned by Potts. Shortly after her meal, she developed a rash, a tight chest, blue lips, and hives. These symptoms required immediate medical treatment, including a five-hour hospital stay.

On May 24, 1991, Brown and her husband, Marvin Brown, filed a complaint against McDonald's and Potts. They later filed an amended complaint adding Keystone, a producer of McLean, as a defendant. In their complaints, they alleged that a seaweed-derived ingredient in the McLean caused Brown's severe reaction. They alleged that the defendants knew, or should have known, that consumers could have such a reaction, but had failed to warn Brown of the presence of this ingredient and of the risk it posed. They alleged that this failure to warn proximately caused her injuries and that, therefore, the defendants were liable to Ms. Brown for compensatory damages and to Mr. Brown for his loss of consortium.

After some discovery, each of the appellees moved for summary judgment. The Browns answered in opposition, and each appellee replied. On June 29, 1994, the trial court granted summary judgment to the appellees, without discussion. The Browns now appeal, asserting a single assignment of error:

### Assignment of Error

"The trial court erred and abused its discretion by granting Defendants–Appellees' motions for summary judgment by failing to construe the evidence in favor of the non-moving party and failing to recognize that there were material issues of fact on which reasonable minds could differ."

### Summary Judgment

In reviewing a trial court's entry of summary judgment, an appellate court applies the same standard used by the trial court. *Parenti v. Goodyear Tire & Rubber Co.* (1990), 66 Ohio App.3d 826, 829, 586 N.E.2d 1121, 1122–1123. Pursuant to Civ.R. 56(C), summary judgment is proper if:

"(1) [n]o genuine issue as to any material fact remains to be litigated;

"(2) the moving party is entitled to judgment as a matter of law; and

"(3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274; *Delker v. Ohio Edison Co.* (1989), 47 Ohio App.3d 1, 2, 546 N.E.2d 975, 976.

While the movant bears the burden of establishing that there are no genuine issues of fact (*Fyffe v. Jeno's, Inc.* [1991], 59 Ohio St.3d 115, 120, 570 N.E.2d 1108, 1113–1114), where he supports the motion with sufficient proof, the nonmoving party must set forth specific facts showing that a genuine issue for trial still exists. "A motion for summary judgment forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at

trial." *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus.

### Products Liability

Ohio's statutory products liability law limits and defines the products liability causes of action that had developed in the common law. Consequently, it is imperative that we adhere to the exact statutory formulations, rather than rely uncritically upon common-law notions. To that end, we will (1) clarify the kinds of defendants present in this case, then (2) set out the statutory liability framework for a manufacturer's liability, and determine whether the Browns produced evidence of each element sufficient to survive the manufacturers' motions for summary judgment, and (3) set out the statutory liability framework for a supplier's liability, and determine whether the Browns produced evidence of each element sufficient to survive the supplier's motion for summary judgment.

1. Defendants

R.C. 2307.71(I) defines "manufacturer" as "a person engaged in a business to design, formulate, produce, create, make, construct, assemble, or rebuild a product or a component of a product." R.C. 2307.71(O) provides:

"(1) 'Supplier' means, subject to division (O)(2) of this section * * * :

"(a) A person that, in the course of a business conducted for the purpose, sells, distributes, leases, prepares, blends, packages, labels, or otherwise participates in the placing of a product in the stream of commerce[.]

"(2) 'Supplier' does not include * * * :

"(a) A manufacturer * * *."

The Browns argue that McDonald's and Keystone are both manufacturers and suppliers. They correctly argue that, because both McDonald's and Keystone admit to participating in the development of the McLean, they meet the statutory definition of "manufacturer." Because the definition of "supplier" specifically excludes a manufacturer, however, these two manufacturers cannot also be suppliers. For this reason, we will consider only whether they could be found to be liable as manufacturers. There is no dispute that Potts is a supplier; he admits that he sells McLeans and offers no evidence to oppose Ms. Brown's deposition testimony that she bought the McLean in question at his restaurant.

2. Manufacturer's Liability

A cause of action against a manufacturer for harm caused by a defective product is governed by R.C. 2307.73, which provides:

"(A) A manufacturer is subject to liability for compensatory damages based on a product liability claim only if the claimant establishes, by a preponderance of the evidence, both of the following:

"(1) * * * the product in question * * * was defective due to inadequate warning or instruction as described in section 2307.76 of the Revised Code * * * ;

"(2) A defective aspect of the product in question as described in division (A)(1) of this section was a proximate cause of harm for which the claimant seeks to recover compensatory damages."

This section provides for strict products liability, so long as the product is defective. In order to determine whether a product is defective due to inadequate warning or instruction, however, it is necessary to consult R.C. 2307.76, which provides:

"(A) Subject to division[ ] (B) * * * of this section, a product is defective due to inadequate warning or instruction if either of the following applies:

"(1) It is defective due to inadequate warning or instruction at the time of marketing if, when it left the control of its manufacturer, both of the following applied:

"(a) The manufacturer knew or, in the exercise of reasonable care, should have known about a risk that is associated with the product and that allegedly caused harm for which the claimant seeks to recover compensatory damages;

"(b) The manufacturer failed to provide the warning or instruction that a manufacturer exercising reasonable care would have provided concerning that risk, in light of the likelihood that the product would cause harm of the type for which the claimant seeks to recover compensatory damages and in light of the likely seriousness of that harm.

"(2) It is defective due to inadequate post-marketing warning or instruction if, at a relevant time after it left the control of its manufacturer, both of the following applied:

"(a) The manufacturer knew or, in the exercise of reasonable care, should have known about a risk that is associated with the product and that allegedly caused harm for which the claimant seeks to recover compensatory damages;

"(b) The manufacturer failed to provide the post-marketing warning or instruction that a manufacturer exercising reasonable care would have provided concerning that risk, in light of the likelihood that the product would cause harm of the type for which the claimant seeks to recover compensatory damages and in light of the likely seriousness of that harm.

"(B) A product is not defective due to lack of warning or instruction or inadequate warning or instruction as a result of the failure of its manufacturer to

warn or instruct about an open and obvious risk or a risk that is a matter of common knowledge."

This definition of "defect" introduces negligence concepts of reasonableness, foreseeability, and risk. It codifies the common-law understanding that "the duty imposed upon a manufacturer in a strict liability action for failure to warn is the same as that imposed upon the manufacturer in a negligence action for failure to warn." *Hanlon v. Lane* (1994), 98 Ohio App.3d 148, 153, 648 N.E.2d 26, 29, citing *Crislip v. TCH Liquidating Co.* (1990), 52 Ohio St.3d 251, 256–257, 556 N.E.2d 1177, 1181–1183. In order to recover, then, "the plaintiff must show that the manufacturer had a duty to warn, that the duty was breached, and that the plaintiff's injury proximately resulted from that breach of duty." *Hanlon*, 98 Ohio App.3d at 152, 648 N.E.2d at 28.

In this case, the parties agree that neither manufacturer issued any warning concerning possible reactions to ingredients of the McLean. The manufacturers allege only that a flier describing the McLean is made available to all McDonald's customers. They supported that allegation with a sample of the flier which lists the ingredients, including carrageenan. It does not inform the reader that carrageenan is derived from seaweed, nor that persons who are allergic to seafood may experience an adverse reaction to that ingredient. Ms. Brown purchased the McLean at a drive-through window, and the manufacturers did not submit any evidence that she actually received this flier or that it was offered to her at the time of the sale. In contrast, the Browns offered Ms. Brown's deposition testimony that she did not receive the flier and that she was not aware that it was available. Based on the evidence presented by all the parties, and viewing it most strongly in favor of the Browns, a jury could reasonably find that the manufacturers failed to warn Ms. Brown.

The manufacturers' argument in support of summary judgment hinges, therefore, upon their allegation that the McLean poses no risk of which they should have been aware. In support of this allegation, they submitted evidence that the McLean is USDA-approved and that carrageenan has wide commercial use as a binder in foods. Their argument is that the McLean is free from defect in that there is nothing about it that poses a risk to ordinary consumers and that there was, therefore, no reason to warn of any risk.

The qualification that the standard is a risk posed to the "ordinary" consumer is derived from Section 402A, Comment *i*, of 2 Restatement of the Law 2d, Torts (1965) 352, which limits causes of action in strict products liability to those involving "unreasonably dangerous" products. Comment *i* states that the product in question "must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." The manufactur-

ers argue that, because of her allergy to seafood, Brown is not an ordinary consumer and that, therefore, they owe no duty to consider the risk that their product may pose to her. McDonald's frames this argument as an affirmative defense, arguing that Ms. Brown's unusual susceptibility to carrageenan operates as a complete bar to her recovery. Neither manufacturer offered evidence of the incidence of such reactions to carrageenan, other than testimony that carrageenan has widespread use in processed foods.

The Browns counter the "ordinary consumer"/"unusual susceptibility" argument by asserting that reactions of the kind Ms. Brown experienced are not unusual. This assertion is supported by the affidavit of Dr. Howard Schwartz, a licensed physician familiar with Ms. Brown's medical history and her symptoms on the day she ate the McLean hamburger. Schwartz swore to his opinion that such a reaction may not be an unusual susceptibility, that the possibility of such a reaction should have been considered in the manufacturing and marketing of the McLean hamburger, that Ms. Brown and other consumers should not be subjected to products such as the McLean that have ingredients with the potential to cause anaphylactic shock, and that Ms. Brown and other consumers should be made aware of the ingredients therein and the possibility for adverse reactions.

The Browns also argue that a plaintiff's unusual susceptibility, assuming that it exists, does not operate as a complete bar to recovery. We note that R.C. 2307.76(A)(1)(a) contains no quantitative standard. It merely asks the question whether the manufacturer knew or should have known of a risk. A jury could reasonably find, for instance, that a manufacturer should have known of a risk to even a small number of consumers. It is R.C. 2307.76(A)(1)(b) that introduces the quantitative element. It asks whether a manufacturer exercising reasonable care would warn of that risk in light of both the *likelihood* and the seriousness of the potential harm. Within this framework, whether the plaintiff's harm was unusual or not would be a factor in calculating whether a manufacturer exercised reasonable care in its decision not to warn. The incidence of the kind of harm at issue in the case is only one factor a jury would consider in finding a duty to warn.

Comment *j* to Section 402 of 2 Restatement of the Law 2d, Torts (1965) 353, comments specifically upon the duty to warn in relation to consumers having allergies. It states:

"In order to prevent the product from being unreasonably dangerous, the seller[1] may be required to give directions or warning, on the container, as to its use. The seller may reasonably assume that those with common allergies, as for

---

1. "Seller" includes manufacturers, for the purposes of this section. Comment *f* to Section 402 of 2 Restatement of the Law 2d, Torts (1965) 350.

example to eggs or strawberries, will be aware of them, and he is not required to warn against them. Where, however, the product contains an ingredient to which a substantial number of the population are allergic, and the ingredient is one whose danger is not generally known, or if known is one which the consumer would reasonably not expect to find in the product, the seller is required to give warning against it, if he has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge, of the presence of the ingredient and the danger. * * *" (Footnote added.)

Though each manufacturer in this case offered evidence that it neither knew nor should have known of the risk of an adverse reaction to carrageenan, that evidence is only probative, not dispositive. Taken together with the evidence offered by the Browns, and viewing it in a light most favorable to them, it is insufficient to merit summary judgment for the manufacturers on the basis of this element.

The manufacturers also denied that Ms. Brown's reaction, which they claimed was unsupported by any evidence, was the proximate result of any defect in a McLean hamburger. They offered no evidence opposing the allegation of causation, whereas the Browns offered Ms. Brown's deposition testimony that her symptoms arose within thirty minutes of having eaten the McLean, that she was treated with medications, and that she was required to remain at the hospital for observation. The Browns supplemented this evidence with Dr. Schwartz's affidavit in which he swore to his opinion that Ms. Brown's reaction was due to her consumption of the McLean hamburger. Because the Browns offered evidence tending to prove causation, that element remains a question for the jury.

The Browns offered sufficient evidence to preserve genuine issues of material fact to be found by a jury with regard to whether either manufacturer is liable for Ms. Brown's harm. For this reason, summary judgment in favor of McDonald's or Keystone was improperly granted.

3. Supplier's Liability

■  A cause of action against a supplier is governed by R.C. 2307.78. Pursuant to that section, a plaintiff may establish a supplier's liability under three separate theories only. Subsection (A)(1) allows a negligence claim. Subsection (A)(2) allows for strict liability if the supplier made an express representation [2] to which the product did not conform at the time the product left the supplier's control. Subsection (B) links the supplier's liability to that of the manufacturer, under conditions that are not relevant to this case.

---

**2.** R.C. 2307.71(N) defines "representation" as "an express representation of a material fact concerning the character, quality, or safety of a product."

Though the Browns allege a strict liability claim, they provide no evidence that Potts made any express representation about the McLean hamburger. Rather, their argument rests on Potts's alleged breach of an implied warranty of merchantability. While Potts, as a seller, may be bound by an implied warranty of merchantability pursuant to R.C. 1302.27, the Browns did not argue their claim under that statute. Instead, they argue that an implied warranty of merchantability qualifies as the kind of representation covered under R.C. 2307.78(A)(2). Because that section applies only to express representations, however, the strict liability theory is not available to these plaintiffs.

The only theory of liability remaining to the Browns, as against Potts, is negligence. "[I]n order to establish actionable negligence, one must show the existence of a duty, a breach of that duty, and an injury resulting proximately therefrom." *Menifee v. Ohio Welding Prods., Inc.* (1984), 15 Ohio St.3d 75, 77, 15 OBR 179, 180–181, 472 N.E.2d 707, 710. The Browns allege that Potts negligently sold Ms. Brown a McLean without adequately warning her of the risk of injury to an allergic consumer. They argue that Potts had a duty to his customers to make reasonable inquiry into the ingredients in the McLean and the potential harmful effects associated with them. They further argue that such an inquiry would have uncovered the risk of a severe adverse reaction to carrageenan and that Potts had a duty to warn his customers of that risk. They argue that Potts's failure to make any inquiry, and his consequent failure to warn, was a breach of that duty and that it proximately caused Ms. Brown's injury.

Potts admits that he did not warn Ms. Brown of the risk that carrageenan might pose to her, alleging only that the descriptive flier provided by McDonald's is "made available" to consumers. In addition, he offers no evidence to support his general denial of the causal element. Potts's argument for summary judgment rests upon the premise that he owed no duty to investigate the nature of carrageenan and its possible effects on allergic consumers. He admits that, had he known that there was some risk associated with an ingredient of the McLean, he would have had a duty to warn his customers.

"In Ohio, the case law has established that a * * * vendor is negligent when he has knowledge of a latent defect rendering a product unsafe and fails to provide a warning of such defect." *Temple v. Wean United, Inc., supra,* 50 Ohio St.2d at 325, 4 O.O.3d at 470–471, 364 N.E.2d at 273. Section 402 of the Restatement states the inverse of this rule:

"A seller of a chattel manufactured by a third person, who neither knows nor has reason to know that it is, or is likely to be, dangerous, is not liable in an action for negligence for harm caused by the dangerous character or condition of the chattel because of his failure to discover the danger by an inspection or test of the chattel before selling it."

Comment *c* to this section, at 346, makes clear that a fact that an actor "has reason to know" is distinct from one that an actor "should know," in that the former phrase "does not impose any duty to ascertain unknown facts." Comment *e*, at 347, elaborates on the seller's reasonable belief that a product is safe:

"In many situations the seller who receives his goods from a reputable source of supply receives it with the firm conviction that it is free from defects; and where a chattel is of a type which is perfectly safe for use in the absence of defects, the seller who sells it with the reasonable belief that it is safe for use and represents it to be safe for use does not act negligently. Frequently, the manufacturer's literature and salesmen and his past record of sending the seller perfectly made chattels create a reasonable belief in the seller's mind that the particular chattel he is selling is made perfectly. When the seller reasonably believes that the chattel is safe, his representation in good faith to that effect is * * * [not] negligent."

Potts alleged that, to his knowledge, the McLean is wholesome, edible, undeleterious, and free from defects. This allegation is supported by his affidavit and deposition testimony that he had sold thousands of McLeans without incident and that, at the time of the sale to Brown, he had no knowledge of the risk of severe allergic reactions to carrageenan. His belief in the safety of carrageenan was supported by the affidavit of McDonald's Vice President of Product Development/Nutrition and the flier listing McLean hamburger's ingredients.

Potts offered ample evidence of his reasonable belief that the McLean hamburger is a safe product. In opposition to this evidence, the Browns offered no evidence that he knew or had reason to know of the possibility of harm to an allergic consumer. Potts swore to his business relationship with the manufacturers and to the fact that they had never given him reason to suspect that there could be some risk associated with any ingredient in the McLean. There is no evidence that either manufacturer's reputation for wholesome products is suspect, nor is there evidence of any other fact "from which a person of reasonable intelligence or of the superior intelligence of the actor would infer"[3] that there was a risk of harm from consuming a McLean.

Even viewing this evidence in a light most favorable to the Browns, reasonable minds could only conclude that Potts owed no duty to his customers to inquire beyond the facts already available to him with respect to the safety of the McLean. In the absence of such a duty, his failure to warn Ms. Brown is not a negligent act, and the trial court appropriately granted summary judgment in his favor.

---

**3.** Comment *a* to Section 401 of 2 Restatement of the Law 2d, Torts (1965) 340.

Conclusion

The judgment of the trial court granting summary judgment to Potts is affirmed. Its judgment granting summary judgment to McDonald's and Keystone is reversed and remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

MAHONEY, J., concurs.

DICKINSON, J., concurs in part and dissents in part.

EDWARD J. MAHONEY, J., retired, of the Ninth Appellate District, sitting by assignment.

DICKINSON, Judge, concurring in part and dissenting in part.

I concur in the majority's affirmance of summary judgment dismissing plaintiffs' claims against Richard K. Potts. I dissent, however, from the reversal of the trial court's granting of summary judgment dismissing plaintiffs' claims against McDonald's Corporation and Keystone Food Corporation.

In reviewing a trial court's ruling on a motion for summary judgment, this court applies the same standard a trial court is required to apply in the first instance: whether there were any genuine issues of material fact and whether the moving party was entitled to judgment as a matter of law. *Parenti v. Goodyear Tire & Rubber Co.* (1990), 66 Ohio App.3d 826, 829, 586 N.E.2d 1121, 1122–1123. The first step in determining whether there were any genuine issues of material fact is an examination of the applicable substantive law:

"As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211.

I agree with the conclusion of the majority that McDonald's and Keystone are "manufacturers" as that term is used in R.C. 2307.71(I) and that plaintiffs' claims against them must be analyzed pursuant to Ohio's statutory products liability law.

Plaintiffs averred in their complaint that McDonald's and Keystone "knew or should have known about the potential risk and injury that the consumption of a McLean hamburger might cause to someone who is allergic to seafood, including seaweed." They further averred that McDonald's and Keystone "failed to

provide a warning/instruction that a manufacturer exercising reasonable care would have provided concerning the above risk." Finally, they averred that they were damaged as a result of the failure of McDonald's and Keystone to warn of the alleged "potential risk and injury."

As noted by the majority, R.C. 2307.76 sets forth the applicable standards for determining whether a product is defective due to a failure to warn. Pursuant to R.C. 2307.76, a product may be defective either because of a failure to provide an adequate warning at the time of marketing or because of a failure to provide a post-marketing warning. Although there could be a distinction between the analysis of a failure to provide a warning at the time of marketing and a failure to provide a post-marketing warning in some cases, there is no such distinction in this case. Ms. Brown's alleged injury occurred within moments after she purchased the McLean hamburger at issue. Accordingly, this case is properly analyzed solely as a claimed failure to provide a warning at the time of marketing.

R.C. 2307.76(A) provides that, in order for a product to be defective because of a failure to warn at the time of marketing, two things must be found to apply:

"(1) [A product] is defective due to inadequate warning or instruction at the time of marketing if, when it left the control of its manufacturer, both of the following applied:

"(a) The manufacturer knew or, in the exercise of reasonable care, should have known about a risk that is associated with the product and that allegedly caused harm for which the claimant seeks to recover compensatory damages;

"(b) The manufacturer failed to provide the warning or instruction that a manufacturer exercising reasonable care would have provided concerning that risk, in light of the likelihood that the product would cause harm of the type for which the claimant seeks to recover compensatory damages and in light of the likely seriousness of that harm."

Pursuant to R.C. 2307.73, a manufacturer is liable for compensatory damages proximately caused by a failure to warn that constitutes a "defect" as defined in R.C. 2307.76. Accordingly, in order to recover against McDonald's and Keystone in this case on their failure-to-warn theory, plaintiffs would have had to prove, by a preponderance of the evidence, that Ms. Brown suffered an allergic reaction to the McLean hamburger and that McDonald's and Keystone knew, or in the exercise of reasonable care should have known, at the time the McLean hamburger left their hands, that it posed a risk of an allergic reaction to people eating it and that, in light of the likelihood of that harm and its seriousness, they failed to provide a warning that manufacturers in their position exercising reasonable care would have provided.

McDonald's and Keystone, as the moving parties, had the initial burden of informing the court the basis upon which they claimed to be entitled to summary judgment. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 274. Plaintiffs, however, would have had the burden of proof at trial on their product liability claim. That fact affects what defendants were required to present to the trial court to carry their initial burden. They were not required to present evidence that disproved plaintiffs' claims against them. Rather, they could discharge their initial burden by " 'showing'—that is, pointing out to the [trial] court—that there [was] an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2554, 91 L.Ed.2d at 275.

To carry their initial burdens, McDonald's and Keystone were not required to point out an absence of evidence to support each element of plaintiffs' case against them. The absence of any essential element of plaintiffs' claim would entitle McDonald's and Keystone to judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. at 2552, 91 L.Ed.2d at 273.

Both McDonald's and Keystone, in their respective briefs in support of their motions for summary judgment, asserted, among other things, that the McLean hamburger purchased by Brown was not defective. This "showing" was sufficient to require plaintiffs, in order to avoid entry of summary judgment dismissing their claims against McDonald's and Keystone, to demonstrate, by depositions, answers to interrogatories, written admissions, affidavits, transcripts, or stipulations, that there was a genuine issue for trial on the question of whether the hamburger was defective. Civ.R. 56.

Plaintiffs attempted to carry their burden of establishing a genuine issue regarding whether the hamburger was defective by submitting an affidavit of Dr. Howard Schwartz, a physician licensed to practice medicine in Ohio in the specialty of allergies. The parts of Schwartz's affidavit relevant to the issue of whether the hamburger was defective were paragraphs five through seven:

"5. That [Ms. Brown's] reaction to the McLean McDonald's Hamburger may not be unusual susceptibility and should have been considered in the manufacturing and marketing of the Hamburger;

"6. That Susan Brown and other similarly situated consumers should have been made aware of the ingredients of the McLean McDonald's Hamburgers and the potential for reactions to those ingredients;

"7. That Susan Brown and similarly situated consumers should not be subjected to products such as McLean McDonald's Hamburgers which have ingredients with the potential to cause anaphylactic reactions."

Civ.R. 56(E) provides, in part, that affidavits supporting or opposing summary judgment "shall set forth such facts as would be admissible in evidence." Schwartz's affidavit was insufficient to establish a genuine issue of material fact regarding whether the hamburger at issue was defective because it did not set forth facts in paragraphs five through seven that "would be admissible in evidence."

As noted previously, pursuant to R.C. 2307.76, in order to show that the McLean hamburger was defective, plaintiffs would have had to prove that McDonald's and Keystone knew, or in the exercise of reasonable care should have known, at the time the McLean hamburger left their hands, that it posed a risk of an allergic reaction to people eating it and that, in light of the likelihood of that harm and its seriousness, they failed to provide a warning that manufacturers in their position exercising reasonable care would have provided. By his conclusory assertions in paragraphs five through seven of his affidavit, Schwartz, in effect, stated that, in his opinion, McDonald's and Keystone knew, or in the exercise of reasonable care should have known, at the time the McLean hamburger left their hands, that it posed a risk of an allergic reaction to people eating it and that, in light of the likelihood of that harm and its seriousness, they failed to provide a warning that manufacturers in their position exercising reasonable care would have provided.

Pursuant to Evid.R. 704, an expert is not foreclosed from offering an opinion at trial "solely because it embraces an ultimate issue to be decided by the trier of fact." Pursuant to Evid.R. 703, however, "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may [only] be those perceived by him or admitted in evidence * * *." Further, pursuant to Evid.R. 705, an expert may only state his opinions "and give his reasons therefor after disclosure of the underlying facts or data." An expert may not testify that he believes that a product was defective without first revealing the facts or data that he perceived or that are in evidence upon which he has based that opinion. Schwartz could only reach a conclusion that the hamburger was defective within the meaning of R.C. 2307.76 by reviewing data concerning how many people are allergic to carrageenan and the likely seriousness of their reaction to it. His opinion, as set forth in his affidavit, that it was defective was not admissible in evidence because he failed to reveal what he perceived, or what evidence he reviewed that was in the record, concerning the number of people who have an allergic reaction to carrageenan and the likely seriousness of their reaction. Inasmuch as he failed to establish the necessary foundation for admission of his opinion, his affidavit did not set forth "facts as would be admissible in evidence" and, therefore, was not sufficient to carry plaintiffs' burden of establishing a

genuine issue for trial. I would affirm the trial court's grant of summary judgment in favor of McDonald's and Keystone.