{¶ 1} This appeal stems from a judgment of the Carroll County Court of Common Pleas sustaining a motion for summary judgment in a negligence lawsuit. Nicholas Scassa ("Appellant") filed a negligence complaint based on injuries he sustained when a propane leak caused his camper-trailer to explode. Appellant purchased the used camper-trailer from Bruce Dye ("Appellee") on a referral from Appellee's son, Waylan Dye. On appeal, Appellant relies on theories of recovery that were not set forth in his complaint, but he cannot use those unpleaded claims to overcome summary judgment. Furthermore, Appellant had a duty to test the propane system himself and cannot have reasonably relied solely on a vague comment by Appellee in response to a question whether everything in the camper-trailer was in working order. The judgment of the trial court is affirmed.
 {¶ 2} Appellant worked with Waylan Dye in the summer of 1998. Appellant was interested in purchasing a used camper-trailer. Waylan Dye knew that his father, Appellee, had an older model camper-trailer. Waylan arranged for Appellant to contact his father and discuss the purchase of Appellee's 1968 camper-trailer.
 {¶ 3} Appellee had purchased the used camper-trailer in 1995 as a place to stay during the annual Jefferson County Fair, which takes place in August. (Dye Depo. pp. 6-7.) Appellee did not recall whether he had ever used the stove or furnace in the camper-trailer. (Dye Depo. p. 7.) Appellee did not recall whether he had ever filled the propane tanks. (Dye Depo. p. 8.)
 {¶ 4} Appellant agreed to purchase the camper-trailer for $500, starting with a $100 down payment. (2/22/01 Scassa Depo. pp. 14-15.) Appellant paid the $100 and took possession of the camper-trailer. There is no indication that Appellant paid the remaining $400. (2/22/01 Scassa Depo. p. 15.) Appellant towed the camper-trailer to his mother's property near Leesville Lake. (2/22/01 Scassa Depo. p. 21.) Appellant cleaned out the camper-trailer, which was in such poor condition that Appellant was forced to remove "bee nests." (2/22/01 Scassa Depo. p. 16.)
 {¶ 5} Less than a week after moving and setting up the camper-trailer, Appellant purchased two propane tanks to be used with the camper-trailer. Appellant removed the single propane tank that had been attached to the camper-trailer. (2/22/01 Scassa Depo. p. 20.) Appellant personally installed the two propane tanks to the outside of the camper-trailer. (2/22/01 Scassa Depo. p. 21.) The second tank was installed in an area where no tank had been connected previously. (7/20/01 Scassa Depo. p. 13.) Appellant had prior experience installing propane tanks and stated that he was "very familiar" with them. (2/22/01 Scassa Depo. p. 21.) Appellant did not test the propane tanks or the propane lines in the camper-trailer at any time. (2/22/01 Scassa Depo. p. 22; 7/20/01 Scassa Depo. p. 18.)
 {¶ 6} There is a warning label on the camper-trailer, which states: "[a]fter turning on gas, test gas piping and appliances for leakage with soapy water." (1/30/02 Motion for Summary Judgment, Exhibit A.)
 {¶ 7} On June 13, 1998, Appellant and his girlfriend were in the camper-trailer preparing food. (2/22/01 Scassa Depo. p. 26.) An explosion occurred while the food was cooking on the propane stove. (2/22/01 Scassa Depo. p. 26.) Appellant was burned on his legs and feet. (2/22/01 Scassa Depo. p. 29.)
 {¶ 8} Appellant hired a consultant, Mr. Peter Susey, to discover the cause of the explosion. Mr. Susey stated that a quarter-inch copper gas line was not connected to the propane furnace in the camper-trailer. As a consequence, when Appellant turned on the propane stove, gas from the furnace line leaked into the interior of the camper-trailer. (Susey Depo. p. 18.) Mr. Susey stated that a person using the camper-trailer would not have known about the disconnected propane line if he or she had not used the furnace. (Susey Depo. p. 18.) Mr. Susey stated that the disconnected propane line would not have been readily visible to anyone because it was located behind a cabinet. (Susey Depo. pp. 30-31.)
 {¶ 9} On September 13, 2000, Appellant filed a complaint against Appellee Bruce Dye and against his son Waylan Dye. Appellant alleged three acts of negligence: (1) negligently maintaining the camper-trailer and the propane lines in the camper-trailer; (2) negligent failure to warn of a dangerous condition; and (3) negligent entrustment by Appellee in entrusting the camper-trailer to Waylan Dye.
 {¶ 10} Waylan Dye has not responded to Appellant's complaint.
 {¶ 11} On January 30, 2002, Appellee Bruce Dye filed a Motion for Summary Judgment. Appellee asserted that he was not liable for any type of negligence because he did not know of any dangerous condition at the time of sale, and because Appellant's own negligence, particularly his failure to take any steps to inspect the camper-trailer, caused his injuries.
 {¶ 12} On February 22, 2002, Appellant filed a Response to Summary Judgment. Appellant did not address the issues raised in Appellee's motion for summary judgment. Instead, Appellant asserted three new causes of action that were not part of his complaint. The new theories of relief were: (1) general negligence; (2) negligent misrepresentation; and (3) breach of an express warranty under the uniform commercial code.
 {¶ 13} On May 23, 2002, the trial court granted Appellee's motion for summary judgment. The trial court's judgment entry noted that this Court had the authority to review a trial court's grant of summary judgment de novo. The judgment entry went on to state that, "this court's past practice of writing lengthy opinions is no longer a productive or instructional exercise. Accordingly, the practice has been abandoned * * *." (5/23/02 J.E., p. 2.) The trial court noted that he duly considered all the evidence and filings in the case, and then granted Appellee's motion for summary judgment without further explanation. This timely appeal followed.
 {¶ 14} There was some concern, after the appeal was filed, that this matter did not present a final appealable order because defendant Waylan Dye had never filed an answer to the complaint and had not been dismissed as a defendant from the case. The May 23, 2002, judgment entry did not state that there was, "no just reason for delay," as required by Civ.R. 54(B) in order to create a final appealable order. Appellee filed a motion to dismiss the appeal on that basis. On August 1, 2002, this Court granted Appellant thirty days to obtain an amended judgment entry containing the language required by Civ.R. 54(B). On August 7, 2002, Appellant filed an amended judgment entry containing the appropriate language.
 {¶ 15} Summary judgment, under Civ.R. 56(C), is properly granted where the moving party demonstrates that: "(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Welco Industries, Inc. v. Applied Cos. (1993),67 Ohio St.3d 344, 346, 617 N.E.2d 1129, quoting Temple v. Wean United,Inc. (1977), 50 Ohio St.2d 317, 327, 364 N.E.2d 267.
 {¶ 16} Once the moving party meets this initial burden, the opposing party bears a reciprocal burden in responding to the motion.Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, 526 N.E.2d 798. Under Civ.R. 56(E), "a nonmovant may not rest on the mere allegations or denials of his pleading but must set forth specific facts showing there is a genuine issue for trial." Chaney v. Clark Cty. Agricultural Soc.,Inc. (1993), 90 Ohio App.3d 421, 424, 629 N.E.2d 513. The nonmoving party must produce evidence on any issue for which that party bears the burden at trial. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264;Celotex Corp. v. Catrett (1986), 477 U.S. 317, 322, 106 S.Ct. 2548,91 L.Ed.2d 265.
 {¶ 17} A reviewing court conducts a de novo review of the trial court's decision to grant summary judgment. N. Coast Cable L.P. v.Hanneman (1994), 98 Ohio App.3d 434, 440, 648 N.E.2d 875.
 {¶ 18} A court should grant summary judgment with caution, resolving all doubts against the moving party. Osborne v. Lyles (1992),63 Ohio St.3d 326, 333, 587 N.E.2d 825. Summary judgment is appropriate if, after construing the evidence in a light most favorable to the opposing party, there exists no genuine issue of material fact and reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. State ex rel. The V Cos. v. Marshall
(1998), 81 Ohio St.3d 467, 473, 692 N.E.2d 198.
 {¶ 19} Before dealing with Appellant's arguments on appeal, we feel compelled to repeat the words of the Ohio Supreme Court that:
 {¶ 20} "[A] trial court must conscientiously examine all the evidence before it when ruling on a summary judgment motion. * * * A reviewing court, even though it must conduct its own examination of the record, has a different focus than the trial court. If the trial court does not consider all the evidence before it, an appellate court does not sit as a reviewing court, but, in effect, becomes a trial court. * * * [T]he trial court make[s] the initial determination whether to award summary judgment; the trial court's function cannot be replaced by an `independent' review of an appellate court." Murphy v. Reynoldsburg
(1992), 65 Ohio St.3d 356, 359-360, 604 N.E.2d 138.
 {¶ 21} The fact that this Court and the Ohio Supreme Court conduct an independent de novo review of trial court decisions granting summary judgment does not change or minimize the responsibility of the trial court in ruling on motions for summary judgment. In point of fact, the trial court's explanation of why it is granting summary judgment can only be helpful in reviewing the decision. The trial court's judgment entry and reasoning are part of the de novo review process. Even though a reviewing court is not required to defer to the trial court's reasoning, the trial court's analysis often has a persuasive effect during appellate review. We strongly encourage the trial court not to abandon its duty, but to continue to explain its reasoning when granting summary judgment.
 {¶ 22} Appellant's sole assignment of error asserts:
 {¶ 23} "The Trial Court Erred In Granting Defendant-appellee's Summary Judgment Motion."
 {¶ 24} Appellant presents four arguments in support of this appeal. In so doing, Appellant is attempting to assert four new causes of action on appeal that were not included in his original complaint. Two of the new claims are based on a general assertion of negligence. Appellant also does not explain how a general negligence claim applies to a sales transaction. The claim of a buyer against a seller is a claim sounding in contract and not in tort. Therefore, contract principles apply unless there are more specific tort theories to be asserted. See, e.g., Ohayonv. Safeco Ins. Co. of Illinois (2001), 91 Ohio St.3d 474, 747 N.E.2d 206, paragraph one of the syllabus.
 {¶ 25} The third new cause of action brought on appeal is negligent misrepresentation. The fourth new claimed cause of action is that Appellee breached an express warranty under the uniform commercial code.
 {¶ 26} These are the same assertions Appellant attempted to raise for the first time in his response to summary judgment. Appellant was required to raise these claims in his pleadings. Civ.R. 8(A) sets forth the requirements for presenting claims for relief. The pleading must contain: "(1) a short and plain statement of the claim showing that the party is entitled to relief, and (2) a demand for judgment for the relief to which the party claims to be entitled." Civ.R. 8(A). This is known as notice pleading. One of the basic purposes of notice pleading is to insure, "that the adverse party will receive fair notice of the claim and an opportunity to prepare his response thereto." Fancher v. Fancher
(1982), 8 Ohio App.3d 79, 83, 455 N.E.2d 1344.
 {¶ 27} A plaintiff may not successfully rebut a motion for summary judgment by merely raising new theories of recovery in its reply opposing summary judgment. White v. Mt. Carmel Med. Ctr. ,150 Ohio App.3d 316,2002-Ohio-6446, 780 N.E.2d 1054, ¶ 29. Appellant's complaint was filed on September 13, 2000. His motion in opposition to summary judgment was filed on February 22, 2002. At no time in the seventeen months between the filing of the complaint and the filing of the motion in opposition to summary judgment did Appellant give any indication that he was pursuing any claims other than those stated in his original complaint. Appellant did not attempt to amend his complaint to include these new theories of recovery. Appellee's motion for summary judgment was based on the claims presented in Appellant's complaint, and Appellant was required to respond to the motion for summary judgment based on the claims already presented rather than by surprising Appellee and the court with new claims. Id.
 {¶ 28} Given that Appellant did not respond directly to any of Appellee's arguments in his motion for summary judgment, we must conclude that Appellant did not meet his reciprocal burden to establish that there were genuine issues of material fact that could only be resolved at trial.
 {¶ 29} Even though Appellant has not met his reciprocal burden, summary judgment should not automatically be granted. As Rule 56(E) states, if the party opposing summary judgment does not correctly respond as set forth in the rule, "summary judgment, if appropriate, shall be entered against the party." (Emphasis added.) We need now determine if summary judgment was appropriate.
 {¶ 30} Appellant's arguments on appeal are all based on one crucial fact: that Appellee gave him the indication that everything worked in the camper-trailer. The following except from Appellant's deposition clarifies the essence of Appellant's assertion:
 {¶ 31} "Q. [Appellee's counsel]: Was there anything that [Appellee] Bruce Dye failed to do that you think he should have done to prevent these injuries in the first place?
 {¶ 32} "A. [Appellant]: No.
 {¶ 33} "Q. Do you view yourself in any way as partially responsible for your own injuries?
 {¶ 34} "A. No.
 {¶ 35} "Q. Can you identify, in any specific or general way, the manner in which you claim Bruce Dye was negligent?
 {¶ 36} "A. To the fact that I was told everything worked in the camper." (2/22/01 Scassa Depo. pp. 39-40.)
 {¶ 37} The complaint is further clarified by another statement Appellant made during his February 22, 2001, deposition:
 {¶ 38} "A. [Appellant]: Waylan [Dye] called his father, Mr. Dye [Appellee], first. He asked him about selling the camper to me. Then I spoke with Mr. Dye [Appellee], basically just about did everything work, and he said `yes,' meaning the heater, the stove, and the bathroom, because it had a little toilet in it.
 {¶ 39} "Q. [Appellee's counsel]: Okay. Tell us exactly what you said.
 {¶ 40} "A. Exactly? Basically, I asked him about the condition of everything and if everything worked.
 {¶ 41} "Q. All right. What did you say?
 {¶ 42} "A. What did I say? Basically, that's what I asked him, if everything worked. And he said `yes.' And then we talked about a price, and I believe the price was $500, and I said that I would give the check to his son. It was a short conversation." (2/22/01 Scassa Depo. pp. 8-9.)
 {¶ 43} We will begin our analysis by assuming that Appellee did make some kind of statement indicating everything in the camper-trailer was in working order. The determinative issues are: (1) whether Appellee's statement created a duty of care; and (2) whether Appellant was justified in relying on that statement rather than taking precautions before using the propane appliances in the camper-trailer. The two issues are integrally related.
 {¶ 44} In the context of the sale of goods, a seller's general commendations about an item for sale are considered as mere "puffing" and do not give rise to additional liability on the seller's part. Kondratv. Morris (1997), 118 Ohio App.3d 198, 207, 692 N.E.2d 246. "`[M]isrepresentations are not actionable unless the complaining party was justified in relying thereon in the exercise of common prudence and diligence. And where the representation consists of general commendations or mere expressions of opinion, hope, expectation, and the like, and where it relates to matters which from their nature, situation, or time, can not be supposed to be within the knowledge or under the power of the party making the statement, the party to whom it is made is not justified in relying upon it and assuming it to be true; he is bound to make inquiry and examination for himself so as to ascertain the truth.'"Guernsey Petroleum Corp. v. Data General Corp. (1987), 183 Ga. App. 790,793, 359 S.E.2d 920, citing Rogers v. Sinclair Refining Co. (1934),49 Ga. App. 72, 75, 174 S.E. 207.
 {¶ 45} "While purchasers are normally entitled to rely on the reasonable representations of sellers, `a party dealing on equal terms with another is not justified in relying on representations where the means of knowledge are readily within his reach.'" J.A. Industries, Inc.v. All Am. Plastics, Inc. (1999), 133 Ohio App.3d 76, 84, 726 N.E.2d 1066, quoting 37 Corpus Juris Secundum (1997) 229, Fraud, Section 44(a).
 {¶ 46} Appellant cannot succeed on any misrepresentation claim arising out of Appellee's alleged comments because Appellant should not have relied on a vague commendation that "everything works" rather than relying on his own inspections of the propane appliances and linkages. Furthermore, Appellant has not presented any proof that Appellee gave assurances about any specific appliance or device in the camper-trailer, including the furnace or propane stove. Appellant's own statements show that he assumed much more than can reasonably be inferred by the vague acknowledgment allegedly made by Appellee. Appellant may have known what he was asking when he inquired if "everything worked"; Appellee, however, did not have the ability to know what was in Appellant's mind when he inquired in such a cryptic fashion.
 {¶ 47} Even assuming that Appellee made the statements alleged by Appellant, there are no genuine issues of material fact that would prevent summary judgment in Appellee's favor.
 {¶ 48} Dealing first with the negligent maintenance claim, Appellee owed no duty to Appellant to maintain the camper-trailer in any condition prior to the sale. Appellee owned the camper-trailer as personal property prior to selling it to Appellant, and was free to do with it as he liked. Negligent maintenance is not a claim for which Appellant may seek relief.
 {¶ 49} Concerning the claim of negligent failure to warn, Appellant has alleged facts which make it impossible to establish the elements of that claim. Appellee argues, and Appellant agrees, that Appellee did not know of any alleged defect in the camper-trailer prior to selling the camper-trailer to Appellant. Appellee argues that he cannot be liable for failing to warn unless he knew about a defect or danger in the camper-trailer. Appellee is correct.
 {¶ 50} "In order to recover in a products liability action based on the negligent failure to warn, the plaintiff must show that the manufacturer had a duty to warn, that the duty was breached, and that the plaintiff's injury proximately resulted from that breach of duty. SeeFreas v. Prater Constr. Corp., Inc. (1991), 60 Ohio St.3d 6, 8-9,573 N.E.2d 27, 29-31. Accordingly, a manufacturer cannot be held liable for the negligent failure to warn unless the plaintiff first establishes that the manufacturer had a duty to warn. To determine whether a manufacturer had a duty to warn, Ohio courts follow the principles set forth in Restatement of the Law 2d, Torts (1965) * * *." Hanlon v. Lane
(1994), 98 Ohio App.3d 148, 152, 648 N.E.2d 26.
 {¶ 51} There are two sections of Restatement of the Law 2d, Torts, that are relevant to Appellant's claim. The first is 2 Restatement of the Law 2d, Torts (1965), Section 388, dealing with negligent failure to warn. Section 388 states:
 {¶ 52} "One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
 {¶ 53} "(a) knows or has reason to know that the chattel is oris likely to be dangerous for the use for which it is supplied , and
 {¶ 54} "(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
 {¶ 55} "(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous." (Emphasis added.)
 {¶ 56} Comment g of Section 388 states:
 {¶ 57} "The duty which the rule stated in this section imposes upon the supplier of a chattel for another's use is to exercise reasonable care to give those who are to use the chattel the information with the supplier possesses * * *."
 {¶ 58} The second relevant section is 2 Restatement of the Law, Torts (1965), Section 401, which is entitled "Chattel Likely to be Dangerous":
 {¶ 59} "A seller of a chattel manufactured by a third person whoknows or has reason to know that the chattel is, or is likely to be,dangerous when used by a person to whom it is delivered or for whose use it is supplied, or to others whom the seller should expect to share in or be endangered by its use, is subject to liability for bodily harm caused thereby to them if he fails to exercise reasonable care to inform them of the danger or otherwise to protect them against it." (Emphasis added.)
 {¶ 60} It is clear from both of these sections of the Restatement that there can be no liability for negligent failure to warn unless the plaintiff proves that the manufacturer or seller knew or had reason to know of a dangerous condition. See, e.g., Horg by Horg v. Atlas SafetyEquipment Co., Inc. (Sept. 24, 1986), 3rd Dist. No. 4-85-8.
 {¶ 61} Appellant did not provide any evidence that Appellee knew or had reason to know of any dangerous condition of the camper-trailer. On the contrary, Appellant agrees with Appellee about the fact that Appellee never used the furnace or the stove in the camper-trailer. (2/2/02 Response to Summary Judgment, p. 3; Appellant's Brief, p. 2.) If Appellee never used the furnace or the stove, Appellee would not have had any reason to know of the condition that led to Appellant's injuries.
 {¶ 62} In addition, Appellee had no duty to uncover hidden defects before selling the camper-trailer. Appellee cites the Brown v. McDonald'sCorp. (1995), 101 Ohio App.3d 294, 655 N.E.2d 440, which involved a claim of negligent failure to warn of dangers associated with eating a fast-food hamburger. The following excerpt from Brown is instructive here:
 {¶ 63} "Section 402 of the Restatement states * * *:
 {¶ 64} "`A seller of a chattel manufactured by a third person, who neither knows nor has reason to know that it is, or is likely to be, dangerous, is not liable in an action for negligence for harm caused by the dangerous character or condition of the chattel because of his failure to discover the danger by an inspection or test of the chattel before selling it.'
 {¶ 65} "Comment c to this section, at 346, makes clear that a fact that an actor `has reason to know' is distinct from one that an actor `should know,' in that the former phrase `does not impose any duty to ascertain unknown facts.' Comment e, at 347, elaborates on the seller's reasonable belief that a product is safe:
 {¶ 66} "`In many situations the seller who receives his goods from a reputable source of supply receives it with the firm conviction that it is free from defects; and where a chattel is of a type which is perfectly safe for use in the absence of defects, the seller who sells it with the reasonable belief that it is safe for use and represents it to be safe for use does not act negligently. Frequently, the manufacturer's literature and salesmen and his past record of sending the seller perfectly made chattels create a reasonable belief in the seller's mind that the particular chattel he is selling is made perfectly. When the seller reasonably believes that the chattel is safe, his representation in good faith to that effect is * * * [not] negligent.'" Id. at 302-303.
 {¶ 67} The aforementioned sections of the Restatement establish that a defendant only has a duty to warn about a dangerous aspect of a product if the defendant knew about the danger. Appellant has failed to provide any evidence that Appellee knew of any dangers in the camper-trailer. Appellant has gone even farther, and has himself alleged that Appellee did not know of the danger that caused Appellant's injuries. Appellant's lack of evidence and the posture of his arguments have foreclosed any possibility of succeeding on a claim of negligent failure to warn.
 {¶ 68} Summary judgment is also appropriate on the negligent failure to warn claim because Appellant failed to rebut the evidence that there was a warning label on the camper-trailer where the propane tanks were attached. The label warned Appellant to "test gas piping and appliances for leakage with soapy water test." If Appellant had done a soapy water test on all the appliances, including the furnace, and on all the gas piping as directed, Appellant would have undoubtedly found the disconnected gas line. Appellant also failed to produce any evidence that he would have heeded additional warnings that Appellee might have provided. "Even if it be proved that a manufacturer failed to warn of a product-related danger, `it is relevant to show whether the user of the product would have acted in the same manner had a proper warning been given.'" Whiston v. Bio-Lab, Inc. (1993), 85 Ohio App.3d 300, 305,619 N.E.2d 1047, quoting 63 American Jurisprudence 2d (1984), 455, Product Liability Section 356.
 {¶ 69} With respect to the claim of negligent entrustment, Appellant has not alleged the type of facts appropriate to that claim. The theory of negligent entrustment is defined by the Ohio Supreme Court as follows: "[t]he owner of a motor vehicle may be held liable for an injury to a third person upon the ground of negligence if the owner knowingly, either through actual knowledge or through knowledge implied from known facts and circumstances, entrusts its operation to an inexperienced or incompetent driver whose negligent operation results in the injury."Gulla v. Straus (1950), 154 Ohio St. 193, 93 N.E.2d 662, paragraph three of the syllabus. The facts alleged by Appellant do not involve any injury resulting from the negligent operation of a motor vehicle by an incompetent driver.
 {¶ 70} Finally, we must review Appellee's argument in his motion for summary judgment that Appellant's own contributory negligence caused his injuries.
 {¶ 71} The Ohio Supreme Court has defined contributory negligence as, "any want of ordinary care on the part of the person injured, which combined and concurred with the defendant's negligence and contributed to the injury as a proximate cause thereof, and as an element without which the injury would not have occurred." Brinkmoeller v. Wilson (1975),41 Ohio St.2d 223, 226, 70 O.O.2d 424, 325 N.E.2d 233. The defense of contributory negligence is governed by the comparative negligence statute, R.C. 2315.19. Contributory negligence does not bar recovery if the plaintiff's negligence is no greater than the combined negligence of all other parties from whom the plaintiff seeks recovery. R.C.2315.19(A)(2).
 {¶ 72} Although issues of contributory and comparative negligence are usually determined by the trier of fact, "summary judgment may be appropriate under the comparative negligence statute where, after construing the evidence most strongly in plaintiff's favor, a reasonable person could only conclude that plaintiff's negligence was greater than the negligence of defendant." Collier v. Northland Swim Club (1987),35 Ohio App.3d 35, 39, 518 N.E.2d 1226.
 {¶ 73} There is no indication that Appellant was in any way prevented from examining the propane lines in the camper-trailer. Given the age of the camper-trailer, the low sales price, the fact that it had not been used for some time, the fact that Appellant moved the trailer to a new location, the fact that Appellant removed an old propane tank and replaced it with two new tanks, the fact that there was a warning label at the spot where the propane tanks were connected, and the fact that Appellant had experience using propane tanks, it is impossible to conclude that any negligence on Appellee's part could be greater than Appellant's negligence in failing to test the entire propane system before using any part of the system.
 {¶ 74} We conclude that summary judgment was appropriate in this case. Therefore, we overrule Appellant's assignment of error and affirm the judgment of the Carroll County Court of Common Pleas.
Judgment affirmed.
Vukovich and DeGenaro, JJ., concur.