This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant-Appellant Para-Chem has appealed from a judgment entered in the Summit County Court of Common Pleas in favor of Plaintiffs-Appellees Gregory Roach and Gordon Falkner on their product liability claims for failure to warn. This Court affirms.
 I. {¶ 2} In early September 1998, Gregory Roach and Gordon Falkner (collectively, "Appellees") were hired as carpet installers by Callahan's Carpet Barn ("Callahan's"). On September 28, 1998, Appellees went to Callahan's to pick up the materials they would need to install a carpet in the basement of Mrs. Frances Biondo's home. Both Appellees understood that the installation at Mrs. Biondo's home would require them to glue the carpet to the floor surface by applying an adhesive.
 {¶ 3} When they arrived at Callahan's, Appellees found the roll of carpet and two cans of adhesive on the dock. Both cans contained Parabond M280 ("M280"), a highly flammable adhesive manufactured by Para-Chem. Neither Mr. Roach nor Mr. Falkner had ever used M280 before.
 {¶ 4} Appellees loaded the materials into their van and drove to Mrs. Biondo's address. Once they arrived at the residence, Appellees examined the basement, which consisted of a kitchenette and a separate storage area. Appellees then moved a refrigerator from the kitchenette into the doorway of the storage area in preparation for the carpet installation. Mr. Roach noticed a water heater inside the storage area, but its presence did not cause him any concern.
 {¶ 5} After the old carpet had been removed, Mr. Roach began spreading the M280 on the basement floor while Mr. Falkner was outside cutting pieces of the new carpet to install. Mr. Falkner brought a piece of carpet to the basement and set it on the floor. Both Appellees described that they then heard a "click" followed by a "whoosh" or a "boom" as the vapors from the M280 ignited, and the force of the blast hurled Mr. Roach across the room. The floor where Mr. Roach applied the M280 had erupted into flames, and the basement quickly filled with smoke. As Appellees got up and began making their way toward the steps to exit the basement, a second blast again knocked them both off their feet. The flames from the second blast traveled up the basement stairwell, blew out a kitchen window, and set a neighbor's tree ablaze. The second blast also knocked Mrs. Biondo, who was in a dining room on the first floor, through two rooms and out the front door of her home onto a sidewalk.
 {¶ 6} In his struggle to escape the basement after the second blast, Mr. Roach tripped over a roll of carpet on the floor and fell down into the burning glue. Mr. Falkner, seeing that Mr. Roach was lying face down in the glue and was no longer moving, pulled his shirt over his face and ran to where he thought Mr. Roach was. Mr. Falkner finally found Mr. Roach, and dragged him up the stairs and out of the basement. Both men then ran outside, where a neighbor helped extinguish their burning bodies with water from a garden hose.
 {¶ 7} Appellees suffered severe burns, and underwent months of hospitalization, reconstructive surgeries, and rehabilitative therapy. Both subsequently filed actions against Para-Chem and several other defendants, alleging numerous causes of action and seeking compensatory and punitive damages. The cases were consolidated by the trial court, and all parties proceeded with discovery. The parties disposed of all claims prior to trial except a product liability failure to warn claim against Para-Chem, and the matter proceeded to trial only on that claim. At the close of all the evidence, the trial court directed a verdict in favor of Para-Chem with respect to the claim for punitive damages, but allowed Appellees' claims for compensatory damages to go to the jury. The jury thereafter agreed on a five million dollar verdict in favor of Mr. Roach and a three million dollar verdict in favor of Mr. Falkner. Para-Chem then moved for judgment notwithstanding the verdict ("JNOV") or, in the alternative, for a new trial. The court denied Para-Chem's motion. Para-Chem has timely appealed, asserting four assignments of error.
 II. Assignment of Error Number One "THE JURY'S VERDICT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE, AND THE TRIAL COURT INCORRECTLY DENIED PARA-CHEM'S MOTIONS FOR A DIRECTED VERDICT AND FOR [JNOV]."
 {¶ 8} In its first assignment of error, Para-Chem has argued that the trial court erred in denying its motions for directed verdict and for JNOV. Para-Chem has contended that Appellees failed to introduce sufficient evidence from which reasonable minds could conclude that 1) Para-Chem owed a duty to warn, 2) Para-Chem breached any duty to warn, and 3) any breach of a duty proximately caused injury to Appellees.
 {¶ 9} Our standard of review of a trial court's denial of a motion for JNOV is the same as that applicable to a motion for a directed verdict. Posin v. A.B.C. Motor Court Hotel (1976), 45 Ohio St.2d 271,275. Whether a trial court properly granted or denied a motion for directed verdict presents a question of law, which we review de novo.Schafer v. RMS Realty (2000), 138 Ohio App.3d 244, 257, appeal not allowed (2000), 90 Ohio St.3d 1472. Civ.R. 50(A)(4) provides:
 "When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
 {¶ 10} A motion for a directed verdict tests the sufficiency of the evidence, not the weight of the evidence or the credibility of witnesses. Wagner v. Roche Laboratories (1996), 77 Ohio St.3d 116,119-120. In ruling on a motion for a directed verdict, the trial court must construe the evidence most strongly in favor of the non-moving party. Posin, 45 Ohio St.2d at 275. When the party opposing the motion has failed to produce any evidence on one or more of the essential elements of a claim, a directed verdict is appropriate. Hargrove v. Tanner
(1990), 66 Ohio App.3d 693, 695. However, where there is substantial evidence upon which reasonable minds may reach different conclusions, the motion must be denied. Posin, 45 Ohio St.2d at 275.
 {¶ 11} It is undisputed that Para-Chem was the "manufacturer" of the M280 that Appellees were using on September 28, 1998, as that term is defined at R.C. 2307.71(I). The elements of a product liability claim against the manufacturer of a defective product are set forth at R.C.2307.73:
 "(A) A manufacturer is subject to liability for compensatory damages based on a product liability claim only if the claimant establishes, by a preponderance of the evidence, both of the following:
 "(1) Subject to division (B) of this section, the product *** was defective due to inadequate warning or instruction as described in R.C. 2307.76[;]
 "(2) *** [A] defective aspect of the product as described in division (A)(1) of this section was a proximate cause of harm for which the claimant seeks to recover compensatory damages."
 {¶ 12} Where the product is shown to be defective, R.C. 2307.73(A) provides for strict products liability. Brown v. McDonald's Corp. (1995),101 Ohio App.3d 294, 298. R.C. 2307.76 describes the circumstances under which a product is defective due to inadequate warning or instruction:
 "(A) Subject to divisions (B) and (C) of this section, a product is defective due to inadequate warning or instruction if either of the following applies:
 "(1) It is defective due to inadequate warning or instruction at the time of marketing if, when it left the control of its manufacturer, both of the following applied:
 "(a) The manufacturer knew or, in the exercise of reasonable care, should have known about a risk that is associated with the product and that allegedly caused harm for which the claimant seeks to recover compensatory damages;
 "(b) The manufacturer failed to provide the warning or instruction that a manufacturer exercising reasonable care would have provided concerning that risk, in light of the likelihood that the product would cause harm of the type for which the claimant seeks to recover compensatory damages and in light of the likely seriousness of that harm."
 {¶ 13} This Court has previously explained that "the duty imposed upon a manufacturer in a strict liability action for failure to warn is the same as that imposed upon the manufacturer in a negligence action for failure to warn." Hanlon v. Lane (1994), 98 Ohio App.3d 148, 153. In other words, it must be proven that, in the exercise of ordinary care, the manufacturer knew or should have known of the risk or hazard about which it failed to warn. Crislip v. TCH Liquidating Co. (1990),52 Ohio St.3d 251, 257. The claimant must further show that the manufacturer failed to take the precautions that would be taken by a reasonable person in presenting its product to the public. Id.
 Para-Chem's Duty to Warn {¶ 14} Para-Chem has first argued that it had no duty to warn of any potential that M280 might explode. Para-Chem has contended that Appellees failed to present any evidence that M280 explodes, or that the event that occurred in Mrs. Biondo's basement was an explosion. We disagree.
 {¶ 15} The only experts to testify as to the combustibility of M280 in general, and the nature of the blast in Mrs. Biondo's basement in particular, were Lieutenant Robert Wroblewski of the Akron Fire Arson Bureau and Patrick Kennedy. Lieutenant Wroblewski testified that, based upon his investigation of the scene after the blast in Mrs. Biondo's basement, vapors from the adhesive were ignited by the water heater and a "tremendous explosion" resulted. While he did not identify what he believed were the distinctions between a flash fire and an explosion, the lieutenant concluded from his investigation of the scene that elements of both a flash fire and an explosion were present.
 {¶ 16} Mr. Kennedy, a fire and explosion analyst for a private firm hired by Appellees, testified that a flash fire occurs when gases or vapors ignite and burn. According to Mr. Kennedy, a flash fire may cause thermal damage but does not physically change the confining structure; in other words, a flash fire does not open doors, break windows, or knock people down. An explosion, by contrast, was defined by Mr. Kennedy as a combustion which creates a rapid outward expansion of air called a "blast pressure wave." The defining characteristic of an explosion, as explained by Mr. Kennedy, is the violent movement of this blast pressure wave through a confining structure with such force that the blast alters the physical features of the structure. Mr. Kennedy testified that the terms flash fire and explosion are mutually exclusive: "Damage or change to the confining vessel or structure is part of the definition of an explosion. And part of the definition of a flash fire is that there is no damage or change to the confining vessel or structure." Mr. Kennedy opined that, based on the physical changes and damage caused by the blast pressure waves, both combustion events in Mrs. Biondo's basement were explosions.
 {¶ 17} Para-Chem has next argued that even if an explosion occurred in Mrs. Biondo's basement according to Mr. Kennedy's definition, Appellees nevertheless failed to present sufficient evidence that Para-Chem had a duty to warn that its M280 could explode. Specifically, Para-Chem has contended that Appellees failed to present any evidence that it knew or should have known that its M280 could explode. We find, however, that this contention is without merit.
 {¶ 18} Ms. West, Para-Chem's laboratory manager in charge of developing M280 and other adhesives, testified that Para-Chem knew that the vapors from hexane and naphtha, which combined accounted for almost thirty-five percent of M280, could explosively ignite. Ms. West testified that Para-Chem was provided with and was required to read the material safety data sheets ("MSDS") for hexane and naphtha in connection with its use of those chemicals to produce M280. The MSDS for hexane warned: "This liquid is volatile and gives off invisible vapors. Either the liquid or vapor may settle in low areas or travel some distance along the ground or surface to ignition sources where they may ignite or explode." The naphtha MSDS similarly warned, under the heading "Unusual Fire Hazards":
 "Vapors are flammable and heavier than air. Vapors may travel across the ground and reach remote ignition sources causing a flashback fire danger."
 {¶ 19} The naphtha MSDS further warned:
 "Keep away from heat, sparks, and flame. Extinguish pilot lights, cigarettes and turn off other sources of ignition prior to use and until all vapors have dissipated. Use explosion-proof ventilation to prevent vapor accumulation while in use."
 {¶ 20} Although these warnings accompanied the unadulterated hexane and naphtha compounds, Beverly Eudy, the Para-Chem employee responsible in part for the labeling of M280 since 1984, testified that he did not commission tests to determine whether the hexane and naphtha would retain their explosive properties in M280. Ms. West testified at trial that the combination of hexane with other ingredients changes the characteristics of hexane, but this testimony was impeached by Appellees' use of her deposition testimony, in which she testified that the vapors of the hexane remain the same even when mixed into the M280 compound. At trial, Ms. West attempted to explain that the concentration level of the hexane in the M280 "is the issue."
 {¶ 21} Appellees also presented evidence of the history of the warning labels on M280 and similar products from which the jury could conclude that Para-Chem knew or should have known of the risk that vapors from M280 might explode. Ms. West testified that, prior to 1980, Para-Chem marketed a product similar to M280 that was manufactured by A.Z. Bogert. According to Ms. West and Mr. Eudy, Para-Chem ascertained the ingredients of M280 and began manufacturing M280 in-house in approximately 1980.
 {¶ 22} The label on the M280 that was placed on the market by Para-Chem in approximately 1980 contained the following warnings, under the heading "Vapors May Ignite Explosively":
 "Prevent build-up of vapors — open all windows and doors — use only with cross ventilation. Keep away from heat, sparks and open flame. Do not smoke: Extinguish all flames and pilot lights: Turn off stoves, heaters, electric motors and other sources of ignition during use and until vapors are gone."
 {¶ 23} In 1984, Para-Chem revised the M280 label by adding "For Outdoor Use Only" to the heading over its subsequent warnings, and replaced "open all windows and doors — use only with cross ventilation" with "Use only with good ventilation." Para-Chem's 1984 label retained all other warnings from its 1980 label.
 {¶ 24} In 1996, Para-Chem again altered the M280 label. This time, Para-Chem removed the warnings and instructions regarding preventing vapor build-up, using with cross ventilation, and extinguishing pilot lights and other sources of ignition until vapors are gone. The warning "Vapors May Ignite Explosively" was also removed from the 1996 label, and the instruction "Do Not Use Indoors, Because Of Flammability" was added to the side panel of the label below the first-aid instructions.
 {¶ 25} The 1996 version of the label was on the M280 used by Appellees in Mrs. Biondo's basement. The front panel of the label on the M280 used by Appellees stated that the product was an "All Weather Outdoor Adhesive." The front panel of the label further advised that the product was "Extremely Flammable," that it was a "Flammable Mixture," and that its vapors could cause "Flash Flash Fires." The front panel also instructed: "Read Side Panels Carefully." On the right side panel appeared the instruction: "Do Not Use Indoors, Because Of Flammability."
 {¶ 26} Finally, Para-Chem has agued that Appellees failed to show that it had a duty to warn because even if Para-Chem had known that M280 could explode when used indoors, M280 is not intended for indoor use. Para-Chem has maintained that the label on the M280 used by Appellees specifies that M280 is for outdoor use only, and Para-Chem could not foresee that Appellees would fail to heed the instructions on the label and use it indoors. Again, we disagree.
 {¶ 27} In support of its argument that Appellees' indoor use of M280 was not foreseeable, Para-Chem has directed us to Comment j to Section 402A of 2 Restatement of the Law 2d, Torts (1965) 347, at 353, quoted by the Ohio Supreme Court in Crislip, 52 Ohio St.3d at 255: "Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous." Para-Chem has asserted that it was unforeseeable that Appellees would use M280 indoors, given the statements on the M280 label identifying the product as an "All Weather Outdoor Adhesive," that it was "Extremely Flammable" and a "Flammable Mixture," that its vapors could cause "Flash Flash Fires," and the instruction "Do Not Use Indoors, Because Of Flammability."
 {¶ 28} Joseph Grady, who worked in the carpet adhesive industry as a vice president, regional sales manager, and national product manager, testified as a manufacturing industry expert on behalf of Appellees. According to Mr. Grady, the description "All Weather Outdoor Adhesive" does not indicate to a carpet installer that the product on which the description appears should not be used indoors. Rather, Mr. Grady testified that "All Weather Outdoor Adhesive" merely indicates that the product can be applied effectively outdoors regardless of environmental conditions such as rain or snow. Mr. Grady stated that other products designated "Outdoor Adhesive" can be safely used indoors. In fact, Para-Chem employees Larry Press and Ms. West also testified that Para-Chem manufactures other products entitled "Outdoor Adhesive" that can safely be used indoors.
 {¶ 29} Mr. Grady further testified that the phrases "Vapor Harmful," "Can Cause Flash Flash Fires," and "Extremely Flammable" also would not indicate to a carpet installer that the product should not be used indoors. Both Mr. Grady and Mr. Eudy, Para-Chem's own employee in charge of labeling, averred that extremely flammable adhesives are routinely used indoors. Mr. Grady further testified that these warnings are commonly placed on products in the industry that are regularly used indoors. Mr. Grady stated that using M280 indoors presents a special danger not encountered when using other extremely flammable products indoors, however, because of the high concentration of solvents released into the atmosphere as vapors from M280.
 {¶ 30} With respect to the warning "Do Not Use Indoors, Because Of Flammability," Appellees have cited the Ohio Supreme Court's statement that:
 "The fact finder may find a warning to be unreasonable, hence inadequate, in its factual content, its expression of the facts, or the method or form in which it is conveyed. The adequacy of such warnings is measured not only by what is stated, but also by the manner in which it is stated. A reasonable warning not only conveys a fair indication of the nature of the dangers involved, but also warns with the degree of intensity demanded by the nature of the risk. A warning may be found to be unreasonable in that it was unduly delayed, reluctant in tone or lacking in a sense of urgency." (Citations omitted.) Seley v. G.D. Searle Co. (1981), 67 Ohio St.2d 192, 198.
 {¶ 31} Although Seley involved a drug manufacturer's liability for failure to warn of the risks of taking birth control pills, its explanation is nevertheless instructive in the case sub judice. The warning "Do Not Use Indoors, Because Of Flammability" was placed on the side panel, below the instructions for first-aid measures. This warning was printed in the same type-size as the "First-Aid Measures" heading above it, and "Grams Volatile Organic Compounds/Liter Of Coating: 360" information directly below it. According to Ms. West, Para-Chem's own chemist, the "Do Not Use Indoors, Because Of Flammability" warning was "[n]ot necessarily" conspicuous, and could easily be missed. Mr. Grady testified that the warning is "a good statement, but it's totally misplaced because that [side] panel isn't read" by the carpet installer.
 {¶ 32} Construing the evidence most strongly in favor of Appellees, we must conclude that sufficient evidence was presented from which a reasonable factfinder could determine that the vapors from M280 exploded in Mrs. Biondo's basement, that Para-Chem was aware of the potential that M280 might explode, and it was foreseeable that its M280 might be used indoors. Para-Chem's argument that Appellees failed to adduce sufficient evidence that it had a duty to warn of the explosive potential of the vapors from its M280 must fail.
 Para-Chem's Breach of Its Duty to Warn {¶ 33} Para-Chem has next argued that Appellees failed to present sufficient evidence that Para-Chem breached a duty to warn of any potential of M280 to explode. Para-Chem has contended that the label's warning of flammability adequately advised users of the potential that they could be burned as a result of using M280. The fact that Appellees were burned in an explosion as defined by Mr. Kennedy, Para-Chem has asserted, does not constitute a breach of its duty to warn. Para-Chem has also maintained that Appellees would not have applied M280 in Mrs. Biondo's basement if they had read the label's instruction not to use the adhesive indoors, and their failure to read the supplied warnings cannot be attributed to Para-Chem as a breach of its duty to warn.
 {¶ 34} In rejecting Para-Chem's argument that it was not foreseeable that M280 would be used indoors, we recounted the evidence tending to show the inconspicuousness and hence, inadequacy, of the "Do Not Use Indoors, Because Of Flammability" warning. We also cited Mr. Grady's testimony that the high concentration of solvents in M280 released into the air as vapors posed a danger not presented by many other products labeled "flammable" that are safe for indoor use. A reasonable jury could find from this evidence that the warnings do not adequately advise users of the potential that vapors from the adhesive might travel to distant ignition sources and ignite and/or explode.
 {¶ 35} Furthermore, Appellees introduced labels of a product similar to M280 called "263" adhesive manufactured by W.W. Henry Company ("Henry"). Mr. Grady, who served as a regional sales manager and national product manager for Henry, testified that 263 and M280 are similar products, and that 263 contains less hexane and naphtha than M280. Mr. Grady testified that Henry believed there was a possibility that 263 might be used indoors, and so Henry placed a conspicuous label on the lid of its 263 adhesive boldly warning: "Outdoor Use Only. Danger. Extremely Flammable. Vapors May Cause Flash Fire Or Ignite Explosively. Prevent Vapor Buildup. Eliminate All Sources Of Ignition In Immediate Area. Do Not Use Indoors."
 {¶ 36} For these reasons, we conclude that there was sufficient evidence before the court from which the jury could find that Para-Chem breached its duty to provide the warning that a manufacturer exercising reasonable care would have provided concerning the risk that vapors from M280 might travel to distant ignition sources and ignite and/or explode. See R.C. 2307.76(A)(1)(b). Para-Chem's argument that Appellees failed to read the warnings provided on the M280 label, furthermore, is not appropriate to a determination of whether Para-Chem breached its duty to warn. Rather, the effect of Appellees' having read or not read the warning is properly considered in the context of whether Para-Chem's failure to warn proximately caused Appellees' injuries. See , e.g.,Mitten v. Spartan Wholesalers, Inc. (Aug. 16, 1989), 9th Dist. No. 13891, at 3-4.
 Proximate Cause {¶ 37} Finally, Para-Chem has argued that Appellees failed to present sufficient evidence that any breach of a duty to warn by Para-Chem proximately caused Appellees' injuries. Para-Chem has argued that Appellees failed to read the warnings provided on the label of the M280, and instead relied on the implied representation by Callahan's that M280 was the right adhesive for the installation in Mrs. Biondo's basement. Consequently, according to Para-Chem, Appellees' injuries were not proximately caused by the presence or absence of any warnings on the M280 label.
 "A plaintiff asserting strict liability claims based on failure to provide adequate warnings not only must convince the fact finder that the warning provided is unreasonable, hence inadequate, but he also must establish the existence of proximate cause between the drug and the fact of the plaintiff's injury." Seley, 67 Ohio St.2d at 199-200.
 {¶ 38} This Court subsequently applied Seley's proximate cause analysis in the context of a suit against chemical suppliers by employees injured while manufacturing fireworks:
 "The Ohio Supreme Court divided proximate causation analysis, as it relates to failure-to-warn cases, into a two-fold approach. First, one must determine if the lack of adequate warning contributed to the injured party being exposed to the product. Second, one must determine if exposure to the product constitutes a proximate cause of the injury. Where no warning is given, or where the warning is inadequate, a rebuttable presumption arises that the failure to adequately warn was a proximate cause of the injured party being exposed to the product." (Citations omitted.) Mitten, supra at 4.
 {¶ 39} Para-Chem has argued that any presumption that a failure to warn was the proximate cause of Appellees' injuries was rebutted by evidence that Appellees did not read the warnings on the M280 label. Mr. Falkner testified that he did not read the labels on the M280, and that he only glanced at the container of M280 when he and Mr. Roach went to Callahan's to pick up the supplies for the installation. Mr. Falkner testified that Mr. Roach loaded all the equipment, including the M280, into the van while Mr. Falkner got the work order and the maps and found the location of Mrs. Biondo's residence. Mr. Falkner testified that this division of labor was similar to the process he used on prior installations involving the use of adhesives. Mr. Falkner testified that once they arrived at Mrs. Biondo's residence and removed the old carpet, he began cutting pieces of the new carpet while Mr. Roach took the M280 and installation tools to the basement. Under these facts, we find that Mr. Falkner's reasonable reliance on an inspection of the M280 label by Mr. Roach, the designated applicator of the adhesive for purposes of this installation, did not rebut the presumption that the lack of an adequate warning was a proximate cause of his exposure to the M280.
 {¶ 40} Mr. Roach, moreover, testified that he read the front panel of the M280 can, including the statements "All Weather Outdoor Adhesive," "Extremely Flammable," "Danger: Vapor Harmful And Can Cause Flash Flash Fires," and "Flammable Mixture." Mr. Roach stated that he thought the M280 "All Weather Outdoor Adhesive" was appropriate because he and Mr. Falkner were installing indoor/outdoor carpet in Mrs. Biondo's basement. Mr. Roach testified that he understood the warnings on the label to mean that the M280 would ignite if exposed to an open flame. He stated, however, that he did not derive from the warnings any appreciation for the risk that vapors from the M280 might travel to distant ignition sources and ignite and/or explode.
 {¶ 41} Mr. Roach further testified that he did not read the instruction at the bottom of the label to "Read Side Panels Carefully." Mr. Roach stated that, had he read the directive "Read Side Panels Carefully," he probably would not have read the side panels. Mr. Roach explained: "My experience tells me if it's extremely dangerous, it's going to be in bold print where I can see that." Mr. Roach averred that he would "[a]bsolutely not" have used the M280 in Mrs. Biondo's basement if he had seen the warning on the M280 label not to use the adhesive indoors.
 {¶ 42} In sum, Mr. Roach testified that he read the front label of the M280 container and was not warned thereby of any risks associated with vapors from the M280 traveling to distant ignition sources and igniting and/or exploding. We must conclude, therefore, that his failure to read what has been described as the "inconspicuous" "Do Not Use Indoors, Because Of Flammability" warning on the side label did not rebut the presumption that the inadequacy of the label's warning proximately caused Appellees' exposure to the M280.
 {¶ 43} Finally, with respect to the second prong of the proximate cause analysis, neither party has disputed that Appellees' application of the M280 in Mrs. Biondo's basement proximately caused their injuries. As both prongs of the proximate cause analysis have been resolved in Appellees' favor, we find that Appellees adduced sufficient evidence at trial that Para-Chem's breach of its duty to warn proximately caused Appellees' injuries.
 {¶ 44} Having found that Appellees presented sufficient evidence that 1) Para-Chem had a duty to warn that vapors from M280 had the potential to travel to distant sources of ignition and ignite and/or explode, 2) Para-Chem breached this duty with respect to Appellees, and 3) Para-Chem's breach proximately caused Appellees' injuries, we must conclude that the trial court did not err in denying Para-Chem's motion for a directed verdict or, in the alternative, for JNOV. Para-Chem's first assignment of error is not well taken.
 Assignment of Error Number Two "THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, AND THE TRIAL COURT INCORRECTLY DENIED PARA-CHEM'S MOTION FOR A NEW TRIAL."
 {¶ 45} In its second assignment of error, Para-Chem has argued that the verdicts in favor of Appellees are against the manifest weight of the evidence. Para-Chem's entire argument under this assignment of error consists of the following sentence: "Product users should not be permitted to ignore warnings on product labels and then, when injured as a result of doing so, recover multi-million dollar verdicts against the product manufacturer."
 {¶ 46} App.R. 16(A)(7) requires that an appellant include in its brief:
 "An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies."
 {¶ 47} App.R. 12(A)(2), in turn, provides:
 "The court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required by App.R. 16(A)."
 {¶ 48} This Court is not inclined to canvass the more than seventeen hundred pages of trial transcripts and dozens of exhibits in the record in search of support for Para-Chem's assertion that we should overturn the jury's verdicts and remand the case for a new trial. SeeCardone v. Cardone (May 6, 1998), 9th Dist. Nos. 18349 and 18673, at 18 ("If an argument exists that can support this assignment of error, it is not this court's duty to root it out."). Accordingly, we disregard this assignment of error.
 Assignment of Error Number Three "THE TRIAL COURT INCORRECTLY ALLOWED [APPELLEES] TO INTRODUCE A HIGHLY PREJUDICIAL, IRRELEVANT POST-INCIDENT LABEL INTO EVIDENCE."
 {¶ 49} In its third assignment of error, Para-Chem has argued that the trial court committed prejudicial error by admitting evidence of a "safety seal" label that was not on the container of M280 used by Appellees, but was placed by Para-Chem on other M280 containers on the market at the same time. The seal included the description "Solv-Free Adhesives." At trial, counsel for Mr. Falkner presented Mr. Eudy with such a seal, and questioned him about the meaning of the term "solv-free":
 "Q. [Mr. Falkner's Counsel] S-O-L-V-, and that stands for solvent free?
"A. [Mr. Eudy] Yes.
"Q. But M280 is a solvent product?
"A. That's correct.
"Q. That's not solv-free at all, is it?
"A. No. I just answered."
 {¶ 50} Para-Chem has contended that this evidence constituted "other acts" evidence which was inadmissible under Evid.R. 404(B), which provides:
 "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 51} "The trial court has broad discretion in the admission of evidence and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, an appellate court should not disturb the decision of a trial court." State v. Joseph
(1995), 73 Ohio St.3d 450, 460. An abuse of discretion "connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." State v. Adams (1980),62 Ohio St.2d 151, 157. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621.
 {¶ 52} Para-Chem has contended that the evidence regarding Mr. Eudy's placement of a "solv-free" label on a product that contained hexane and naphtha solvents was inadmissible "other acts" evidence. According to Para-Chem, the only purpose of this "other acts" evidence was to create an impression that Mr. Eudy had a deceptive character, and that he acted in conformity with that character by failing to include the word "explosion" on the label of M280 in spite of his awareness of M280's explosive tendencies.
 {¶ 53} However, we conclude that the trial court did not abuse its discretion by admitting evidence of the "solv-free" label pursuant to the "common scheme, plan, or system" exception of Evid.R. 404(B). In the criminal context, the Ohio Supreme Court described the circumstances under which "other acts" evidence is admissible pursuant to this exception:
 "First, those situations in which the `other acts' form part of the immediate background of the alleged act which forms the foundation of the crime charged in the indictment. In such cases, it would be virtually impossible to prove that the accused committed the crime charged without also introducing evidence of the other acts. To be admissible pursuant to this sub-category of `scheme, plan or system' evidence, the `other acts' testimony must concern events which are inextricably related to the alleged criminal act." State v. Curry
(1975), 43 Ohio St.2d 66, 73.
 {¶ 54} In the case sub judice, Appellees set out to show that Para-Chem knew that vapors from its M280 product were explosive, and that Para-Chem withheld warnings about this danger in spite of its knowledge. To this end, Appellees introduced evidence of the progressive removal of warnings about explosion hazards from its M280 label, beginning in the 1980s. Likewise, Mr. Eudy's testimony that he placed a "solv-free" seal on the M280 when in fact the explosive solvents hexane and naphtha composed almost thirty-five percent of M280 tended to show Para-Chem's systematic plan of withholding its knowledge about the explosion hazards of M280. The trial court therefore did not act arbitrarily, unreasonably, or unconscionably in admitting this evidence pursuant to the "common scheme or plan" exception to Evid.R. 404(B). Para-Chem's third assignment of error is not well taken.
 Assignment of Error Number Four "THE TRIAL COURT INCORRECTLY REFUSED TO INSTRUCT THE JURY ON INTERVENING AND SUPERVENING CAUSES."
 {¶ 55} In its fourth assignment of error, Para-Chem has argued that the trial court erred by rejecting Para-Chem's proposed jury instruction on intervening and supervening causes. Para-Chem has contended that if its proposed instruction had been submitted to the jury, the jury could have concluded that Callahan's action in supplying the M280 to Appellees for use in Mrs. Biondo's basement, and Callahan's failure to train Appellees in the safe use of extremely flammable adhesives, were intervening and supervening causes that broke the causal connection between any deficiency in Para-Chem's label and Appellees' injuries.
 {¶ 56} A requested jury instruction should be given if it is a correct statement of the law applicable to the facts of the case and reasonable minds might reach the conclusion sought by the instruction.Murphy v. Carrollton Mfg. Co. (1991), 61 Ohio St.3d 585, 591. Where a trial court's determination of whether to give a requested instruction depends on the sufficiency of the evidence presented to support the instruction, the trial court's decision will not be disturbed absent an abuse of discretion. See State v. Wolons (1989), 44 Ohio St.3d 64, 68;State v. Lessin (1993), 67 Ohio St.3d 487, 494, certiorari denied (1994), 510 U.S. 1194, 114 S.Ct. 1300, 127 L.Ed.2d 652. On the other hand, "[i]t is well established that the trial court will not instruct the jury where there is no evidence to support an issue." Murphy,61 Ohio St.3d at 591.
 {¶ 57} Para-Chem requested the following instruction on intervening and superseding cause:
 "Causal connection is broken when a subsequent act, or failure to act, intervenes and completely removes the effect of the first act and is itself the proximate cause of the injury. The causal connection of the first act is broken and superseded by the second, only if the intervening act is both new and independent. The term `independent' means the absence of any connection or relationship of cause and effect between the original and the subsequent act. The term `new' means that the second act could not reasonably have been foreseen."
 {¶ 58} While we agree that Para-Chem's jury instruction is a correct statement of the law as set forth in R.H. Macy Co. v. OtisElevator Co. (1990), 51 Ohio St.3d 108, syllabus, we find that the trial court did not abuse its discretion in refusing to submit the proposed instruction to the jury on the ground that there was insufficient evidence to support it. Specifically, Para-Chem has not pointed to any evidence in the record to support a finding by the jury that Callahan's failure to train Appellees in the safe use of extremely flammable adhesives, or Callahan's provision of M280 to Appellees to use in Mrs. Biondo's basement, was unforeseeable.
 {¶ 59} In our disposition of Para-Chem's first assignment of error, we discussed in detail the evidence tending to show that Para-Chem was aware that M280 might be used indoors. In addition, Mr. Grady, Appellees' manufacturing expert, testified that most carpet installers receive little or no pre-installation training, and learn their trade on-the-job. Mr. Grady further testified that the adhesive-manufacturing industry as a whole was aware of this lack of training and experience. For these reasons, Mr. Grady opined, the responsibility of warning the user not to take an inappropriate product indoors rests with the manufacturer.
 {¶ 60} Para-Chem, on the other hand, has pointed to no evidence in support of its assertion that Callahan's failure to train Appellees, or its decision to furnish untrained installers with M280, was unforeseeable. As a result, we must conclude that the trial court did not abuse its discretion in refusing to charge the jury with Para-Chem's proposed instruction. Para-Chem's fourth assignment of error is without merit.
 III. {¶ 61} Para-Chem's assignments of error are overruled. The judgment of the trial court is affirmed.
BAIRD, P.J. and CARR, J. CONCUR.